**Zachary MORGAN, Appellant,**

v.

**Ernest MONTANYE, Warden of Attica State Prison, Correction Officer Steggs, et al., Appellees.**

**No. 614, Docket 74–2390.**

United States Court of Appeals, Second Circuit.

Argued Jan. 23, 1975.

Decided May 6, 1975.

Rehearing En Banc Denied Aug. 13, 1975. See 521 F.2d 693.

Gretchen White Oberman, New York City, for appellant.

Burton Herman, New York City (Louis J. Lefkowitz, Atty. Gen. of N. Y., and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for appellees.

Before LUMBARD, HAYS and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

Zachary Morgan, an inmate at New York's Attica Correctional Facility, appeals from an order by Chief Judge Curtin of the Western District dismissing Morgan's *pro se* civil rights suit (42 U.S.C. § 1983) for injunctive relief and $15,000 damages arising out of allegedly unconstitutional interference by Attica officials with mail sent to Morgan by his attorney in connection with a pending state criminal appeal in the summer of 1973. We affirm.

This suit involved four items of correspondence which Morgan alleged were not handled in accordance with prison regulations governing receipt of mail from an attorney. Under New York prison regulations, "[t]he envelope and contents thereof of outgoing and incoming correspondence [except special correspondence] will be inspected to ascertain that there is nothing present therein which jeopardizes the safety and security of the facility." N. Y. Dep't of Correctional Services, Administrative Bull. No. 20, ¶ 3 (as amended Dec. 14, 1972).[1] Inspection of general correspondence is done in the Correspondence Department by prison officers. Different procedures apply, however, to an inmate's correspondence to and from attorneys and public officials. This "special correspondence" is treated as confidential material and is opened and inspected for contraband only in the prisoner's presence, so that the inmate can make sure that it is not read by prison officials. Morgan's complaint charged that prison officials violated the latter regulation and in doing so infringed his constitutional right to confidential and uncensored communications with his attorney.

The first incident of which Morgan complains occurred on July 14, 1973. Morgan alleged that he received a letter from his court-appointed attorney, Professor Frank S. Polestino of St. John's University School of Law in Jamaica, New York, and that this letter had been unlawfully opened and inspected out of his presence. Both the envelope and letter, which are part of the record on appeal, bear a stamp which prison officials

---

1. Under Administrative Bulletin No. 20, ¶ 3, prison officials are generally authorized only to inspect, but not read, an inmate's general correspondence. Reference Rule 3 to Administrative Bulletin No. 20 provides:

Authorization is hereby given to limit the review of incoming and outgoing mail to inspection only rather than to reading of all mail. The present rules covering special correspondence are in no way [a]ffected by this revision.

Authorization is given also for both inspection and reading of incoming and outgoing correspondence, other than special correspondence[,] of selected inmates to insure the safety and security of the facility. This latter authorization by memo to the inmate's file specifying the necessity to do this as related to insuring the safety and security of the facility is to apply to a limited number of inmates designated specifically by the Superintendent or his designated representative. Such authorizations are to be reviewed periodically.

However, since general correspondence is opened and inspected out of the prisoner's presence, he still has no assurance that such mail might not be read by prison guards.

put on general correspondence when they open and inspect it for contraband in the Correspondence Department. It should be noted, however, that the only indication on the envelope that it might have been from an attorney (and thus special correspondence) was a printed return address from St. John's Law School. Over that the name "F. S. Polestino" was handwritten. Morgan's address was also handwritten. Still, Morgan alleged that the officer in the Correspondence Department should have treated it as special correspondence, especially as the officer could have checked the department file and found that Polestino was listed as Morgan's attorney-of-record and had been on his correspondence list for a year.

Morgan further alleged that on July 23, 1973, a second envelope from Polestino was opened and inspected prior to its delivery to Morgan. This one was larger and contained the brief being prepared for Morgan's appeal. The address and return address were typed, and Attorney-at-Law was stamped on the front. Despite this clear indication that the mail was from an attorney, prison officials treated the package as general correspondence. Morgan claimed that when he received the package the last two pages of the appeal brief were missing.

Morgan complained to Correction Officer Harold Steggs that his legal mail was being treated as general correspondence and charged that someone had intentionally removed the two missing pages from the brief. Steggs, who worked in the Correspondence Department, sent Morgan the following response the next day:

> Mr. Morgan: No one is abusing your right to legal mail, but it is difficult to assume that these Schools of Law are run by competent attorneys. Show me proof that this man was admitted to Law Bar Your legal to and from him will be treated as private legal mail. For your information contents of envelope was not *censored*.[2]

Morgan claims that proof that Polestino was a member of the Bar was unnecessary, because Polestino was listed in the Correspondence Department file as his attorney-of-record. Nevertheless he supplied such proof, for which Steggs thanked him.

The complaint in this action was submitted to the court on August 3, 1973. On August 9, 1973, Morgan received a third letter from Polestino containing copies of the two missing pages from the brief and a note in which Polestino said that he was "disturbed to learn that a part of the brief [he] had sent to [Morgan] was missing." This letter was also allegedly opened and inspected prior to delivery to Morgan, and the envelope and note (which are part of the record on appeal) were stamped as general correspondence by prison officials. Like the July 14th envelope, this envelope bore no indication that it was from an attorney other than a printed law-school return address. Again Morgan's address was handwritten, as was Polestino's name.

Finally, on September 4, 1973, Morgan received another short note from Polestino in an envelope similar to those received on July 14th and August 9th. Again it was apparently opened and inspected out of Morgan's presence and stamped as general correspondence by prison officials.

Morgan's complaint was accompanied by an application to proceed *in forma pauperis* which the court granted on September 18, 1973, also ordering the defendants to show cause why Morgan should not be allowed to proceed further *in forma pauperis*. Defendants filed affidavits from Correction Officers Stephen Seely and Steggs, who responded to charges concerning the July 14th and 23d incidents—the only two raised by Morgan by that time. Seely, who had been on duty July 14th, stated that he had no recollection of opening the letter in question. He noted that inmate's legal mail is handled in the regular course of business pursuant to Administrative

---

2. This note was submitted by Morgan as one of his exhibits.

Bulletin No. 20, and that when mail from attorneys arrives bearing no indication that it is from an attorney, it is opened in the Correspondence Department. Steggs stated that Morgan's legal mail was opened before Morgan on July 23, 1973.[3]

In a four-page affidavit dated October 23, 1973, Morgan contested the affidavits of Steggs and Seely and stated that he had proof that his legal mail had been handled in violation of prison regulations over an extended period of time. On January 15, 1974, the court ordered him to submit such evidence. This he did on January 28th, along with a further affidavit. His evidence consisted not only of the envelopes from July 14th and July 23rd, but also the additional envelopes from August 9th and September 4th allegedly opened and inspected out of his presence. Polestino's letters from July 14th, August 9th, and September 4th were also included.

On June 3, 1974, Judge Curtin filed a brief opinion dismissing this action. He noted first that it was possible that prison officials had opened the envelopes inadvertently not realizing they were legal mail, but he found that whether or not respondents' conduct in opening the letters was inadvertent, it was constitutionally permissible under this circuit's *en banc* decision in Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972). In *Sostre*, after holding that a prison warden had improperly refused to mail Sostre's complaint to a postal inspector and had improperly deleted material from a letter to Sostre's attorney as being irrelevant to Sostre's criminal appeal, this court stated:

We leave a more precise delineation of the boundaries of this protection [against censorship] for future cases.

We need only add that when we say there may be cases which will present special circumstances that *would* justify deleting material from, withholding, or refusing to mail communications with courts, attorneys, and public officials, *we necessarily rule that prison officials may open and read all outgoing and incoming correspondence to and from prisoners. Id.* at 201 (latter emphasis added).

In considering Morgan's appeal, it should be noted that the dismissal below was based upon evidence set forth in affidavits submitted by Morgan, as well as exhibits attached thereto, and also on affidavits submitted by defendant prison officials. The decision is thus essentially a grant of summary judgment for defendants, with the issue on appeal being whether the complaint, affidavits and exhibits raise material issues of fact requiring a trial. See United States ex rel. Haymes v. Montanye, 505 F.2d 977, 979 (2d Cir. 1974). In determining whether Morgan's affidavits and exhibits support a cause of action, the court must be sensitive to the fact that Morgan was proceeding *pro se* below,[4] just as it would be were it considering a decision dismissing his *pro se* complaint prior to the submission of any evidence, see Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However the affidavits and exhibits, even liberally construed in Morgan's behalf, make it clear that Morgan's suit was properly dismissed.

Focusing first on Morgan's primary claim that prison officials unconstitutionally opened and inspected mail from his attorney out of his presence, we find that Morgan's complaint, affidavits, and exhibits allege only a single instance (the July 23d package) where legal mail, clearly marked as being from an attorney,[5] was opened out of his presence.

---

3. This seems to conflict with Steggs' earlier note to Morgan explaining why the July 23rd package had been opened out of Morgan's presence.

4. Counsel was appointed by this court for Morgan's appeal.

5. In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that a state was not required to bear the administrative burden of ascertaining whether individual letters came from attorneys or general correspondents. The Court stated that it was "entirely appropriate that the State

From that single incident there is no indication that Morgan suffered any damage. Even assuming that the last two pages of the brief from Polestino contained in that package were missing as a result of its being opened out of Morgan's presence, Morgan notified Polestino by letter dated July 24, 1973, that the two pages were missing, and Polestino sent copies thereof with a note on August 7th. Following receipt of this letter on August 9th, Morgan made no attempt to contact his attorney and suggest any changes in the brief or add points he wanted to be made in a supplemental brief or at oral argument. Indeed, Polestino wrote Morgan at the end of August, stating that he had not heard from Morgan since late July and reminding him that oral argument of Morgan's criminal appeal was due in several weeks.

Even considering the letters received on July 14th, August 9th, and September 4th, which were not clearly marked as being from an attorney, there is still no indication that Morgan suffered any damage whatsoever. The notes from Polestino are in the record on appeal and there is nothing contained therein the disclosure of which could have prejudiced Morgan's state appeal in any way, even assuming that the mail was read when it was inspected[6] and that the guard had any reason to tell anyone about it. The only possible claim of damages is with respect to the July 14th letter in which Polestino listed the arguments he planned to include in Morgan's appellate brief, which was due within two weeks, but even here the state would already have a general idea of the claims Morgan would raise on appeal. Moreover, Morgan appears to have made no complaint at the time about the alleged mishandling of that letter.

Of course, the opening of legal mail out of a prisoner's presence may cause some prejudice by inhibiting the prisoner and his attorney from discussing in such correspondence matters which they would wish to remain confidential, and this might affect the lawyer's ability to represent his client most effectively. However, there is no indication that the events complained of affected in any way correspondence between Polestino and Morgan concerning Morgan's criminal appeal or any other matter. Indeed it seems that Morgan had little, if anything, to say to Polestino during the time period in question,[7] as indicated by the letter from Polestino to Morgan received September 4th, in which Polestino noted that he had not heard at all from Morgan since late July, when Morgan had written that two pages of the brief were missing. Moreover, other than the July 23rd package, there is no indication that mail to Morgan from an attorney, clearly marked as such, was opened out of his presence and in violation of prison regulations which protect the confidentiality of inmate/attorney correspondence. It should be noted that Morgan submitted an affidavit to the district court as late as January 28, 1974, and the district court had the matter sub judice until June 10th 1974, yet Morgan points to no other instance where legal mail, clearly marked as being from an attorney, was opened.

In these circumstances, we find that the district court properly dismissed Morgan's claim with respect to defendant's allegedly unconstitutional inspection of Morgan's legal mail out of his

---

require any such communications to be specifically marked as originating from an attorney, with his name and address being given, if they are to receive special treatment."

Polestino's letter of July 23d clearly indicated that it was from an attorney, as it was stamped "Attorney-at-Law." Yet Polestino failed to mark his other letters in a similar fashion.

**6.** See footnote 1 supra.

**7.** It should be noted that appellant has never suggested that his *outgoing* "special correspondence" was ever opened and inspected out of his presence or otherwise mishandled by prison officials.

presence. Sostre v. McGinnis, *supra*, relied upon by the district court, expressly permits the opening and reading of prisoner's mail, even from an attorney, in the interest of prison security. Moreover, even if this court were to undertake the reexamination of *Sostre* urged by Morgan's counsel on appeal and possibly modify *Sostre* by way of recognizing a right of a prisoner to confidential correspondence with his attorney,[8] on the record of this case, Morgan's complaint would still have been properly dismissed. There is no basis for any finding that Polestino's effectiveness in representing Morgan was in any way impaired or that Morgan's exercise of his right of access to the courts was in any way chilled. Moreover injunctive relief seems improper where prison regulations protect the confidentiality of attorney/inmate mail and where Morgan alleges only a single instance, now almost two years old, where legal mail, clearly marked as such, was opened and inspected out of his presence.

Morgan makes the additional claim that the case should be reversed and remanded for a trial on the issue of whether prison officials unlawfully censored the last two pages of the appellate brief prepared by Polestino and received at the prison on July 23rd in an envelope clearly marked Attorney-at-Law. It is quite possible that Polestino inadvertently failed to include the last two pages of the brief or that they became detached and were mislaid during the handling of the brief prior to mailing or at the prison. But even assuming that prison officials were responsible,[9] we believe that the claim was properly dismissed, as this was the sole instance complained of where a portion of a letter was missing and, as indicated above, there is no indication that Morgan suffered any damage as a result of not receiving these papers on July 23rd. Standing alone, the loss of these papers seems inadvertent and hardly the basis for a successful constitutional assault.

Affirmed.

---

**8.** Since *Sostre* was decided at least three other circuits have held, contrary to *Sostre*, that prison officials cannot constitutionally monitor attorney/inmate mail as a general practice. See Smith v. Robbins, 454 F.2d 696 (1st Cir. 1972); Adams v. Carlson, 488 F.2d 619, 631 (7th Cir. 1973); Bach v. Illinois, 504 F.2d 1100 (7th Cir. 1974); McDonnell v. Wolff, 483 F.2d 1059, 1066–67 (8th Cir. 1973), aff'd in part, rev'd in part, sub nom. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The Supreme. Court, which dealt with two prisoner-mail cases last term, see Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1895, 40 L.Ed.2d 224 (1974); Wolff v. McDonnell, *supra*, has not decided the question of the extent to which prison officials may constitutionally open and read mail between an inmate and his attorney. See Justice Powell's majority opinion in Wolff v. McDonnell, 418 U.S. at 574–77, 94 S.Ct. 2963. But see Procunier v. Martinez, 416 U.S. at 422, 425, 94 S.Ct. 1895. (Marshall, J., concurring, joined by Brennan & Douglas, JJ.) (finding no sufficient justification for a blanket policy of reading all prison mail); Wolff v. McDonnell, 418 U.S. 539, 601, 94

S.Ct. 2963 (Douglas, J., concurring in part) (same); *id.* at 580, 94 S.Ct. 2963. (Marshall, J., concurring in part) (same). See generally 86 Harv.L.Rev. 1607, 1615–24 (1973).

In Wolff v. McDonnell, *supra*, the Court upheld the constitutionality of regulations, very much like New York's, providing that legal mail would not be read by prison officials, and only opened and inspected for contraband in the prisoner's presence. The Court found that the state, "by acceding to a rule whereby the inmate is present when mail from attorneys is inspected [without being read], has done all, and perhaps even more, than the constitution requires." 418 U.S. at 577, 94 S.Ct. at 2985.

**9.** It should be noted that Administrative Bulletin No. 20 (as amended) prohibits censorship of inmate/attorney correspondence, as it prohibits even the reading of such correspondence by prison officials. In the few situations where censorship of *general* correspondence is permitted, the regulations provide that the letter is to be returned to the sender with the reason for its rejection. If the sender is not known, the letter will be placed in the inmate's file. (See paragraph 12 of Adm.Bull. No. 20, as amended.)