George MARTINEZ, Appellant,

v.

Henry ROSADO and Stephen Dalsheim,
Individually and as Superintendent of
the Ossining Correctional Facility, Ap-
pellees.

No. 431, Docket 79–2134.

United States Court of Appeals,
Second Circuit.

Argued Nov. 13, 1979.

Decided Jan. 23, 1980.

Lloyd Constantine, Brooklyn, N. Y. (John C. Gray, Jr., Brooklyn Legal Services Corp. B, Brooklyn, N. Y., of counsel), for appellant.

Paul E. Milbauer, Deputy Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Gerald J. Ryan, Asst. Atty. Gen., New York City, of counsel), for appellees.

Before KAUFMAN, Chief Judge, and SMITH and OAKES, Circuit Judges.

PER CURIAM:

This appeal, in a prison inmate's action under 42 U.S.C. § 1983 for an alleged beating by a prison guard, is from an order granting the defendants' motion for summary judgment by the United States District Court for the Southern District of New York, Edward Weinfeld, Judge. While the case is a very close one, we hold that the complaint states a claim for relief under § 1983 and that the defendants' affidavits were sufficiently controverted by plaintiff under Rule 9(g) of the General Rules for the Southern and Eastern Districts to raise triable issues of fact. We therefore reverse.

The facts as alleged in the second amended complaint, verified by plaintiff personally,[1] are essentially as follows: Plaintiff Martinez, an inmate at Ossining Correctional Facility, was sent to obtain emory paper from the prison's "jobbing shop." There, he was confronted by defendant Rosado, a correction officer who, without provocation, began to taunt him, calling him a "punk mother-fucker" and a "chicken shit mother-fucker." Rosado threatened to beat Martinez, asked him where his cell was, receiving a response three times, and thereafter seized and severely beat the inmate, kicking him in the groin, stopping only when restrained by other prison authorities. Martinez did not defend himself. He was hospitalized for eleven days and has permanent injuries—kidney pain, seminal dysfunction, and emotional trauma—requiring medical treatment and medication. It is also alleged that defendant Dalsheim, the Ossining superintendent, knew of Rosado's violent proclivities and abusive conduct on previous occasions, and failed to discipline him or relieve him of his duties.

Rosado's affidavit submitted with the motion for summary judgment disputes in some respects the verified complaint. Specifically, it states that Rosado ordered inmate Martinez to produce a pass permitting him to enter the jobbing shop office and that, failing to do so, Martinez was ordered to leave the jobbing shop area, but refused to do so. Thereafter, the affidavit continues, Rosado received authorization from a superior officer (unnamed) and informed Martinez that he was in "keeplock status," confined to his cell. In such status, Rosado asserts, Martinez no longer "required" the keys for the state vehicle he drove to the

---

1. A *verified* complaint can, in some circumstances, be treated as an affidavit under Fed.R. Civ.P. 56(e) in determining a motion for summary judgment, *Runnels v. Rosendale*, 499 F.2d 733, 734 n.1 (9th Cir. 1974); *Khan v. Garanzini*, 411 F.2d 210, 212–13 (6th Cir. 1969); *Fletcher v. Norfolk Newspapers, Inc.*, 239 F.2d 169, 169 (4th Cir. 1956), when it meets the standards for affidavits laid down by Rule 56, *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965).

area, but refused to turn them over after being ordered to do so. It was when Rosado attempted to regain the keys that Martinez, contrary to the Inmate Rule Book, resisted Rosado, putting his hand on the guard's arm. At that point, Rosado states that he was required to use "reasonable force to place Martinez under [his] control and to obtain the keys."

Further supporting defendants' motion for summary judgment was a "Superintendent's Proceeding Report." It states that Martinez "[a]dmitted to charges 2 and 4," which apparently involved violations of Rule 1.90 ("Refusing to obey a direct order") and Rule 1.36 (covering "Security Keys, employees identification, badges or clothing"). The inmate's "explanation" for his actions in the Report is that he "had authorization for keys and and [sic] orders not to give them to anyone else." [2] A "Superintendent's Proceeding Record Sheet" bearing Martinez's signature is to the same effect, noting that Martinez admitted charges 2 and 4 but denied charges 1 and 3, and repeating the same explanatory phrase.

■ The Rule 9(g) statement of plaintiff's attorneys refers back to the "*verified second amended complaint*" and alleges disputes of material fact concerning the following issues: "provocation for the beating," "whether plaintiff resisted . . . in any way," "the severity of the beating," Rosado's "malice," the "verbal taunts and abuse," "the severity and permanence of" Martinez's injuries, and "whether plaintiff refused to obey any lawful direct order." While this statement by appellant's attorneys cannot itself be considered as evidence of what happened during the incident, *see* 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2738, at 699,[3] its reference back to the verified amended complaint requires a court to determine whether the

allegations of that complaint counter the affidavits supporting the motion. *See* note 1, *supra*.

■ Our reading of the complaint leads us to conclude, contrary to the court below, that there are triable issues of fact barring a grant of summary judgment. The beating is described as "without any provocation or justification" and "not reasonably related to or based upon the defendant's duty to maintain order or to have any inmate follow a reasonable command"; rather it is said to have been "intentional, malicious, and for the sole purpose of causing harm to the plaintiff." While these statements do have a conclusory tone, when combined with appellant's specific allegations of verbal taunts and abuses, attempts to provoke plaintiff, and a threat to beat him before the beating occurred—allegations not disputed in Rosado's affidavit—they are sufficient to require a trial here.

■ The superintendent's "Record Sheet" does show that Martinez admitted charges apparently pertaining to "refusing to obey a direct order" and a violation involving "keys," [4] but these admissions do not necessarily contradict appellant's assertion in the complaint that the vicious attack he describes was without sufficient provocation. We certainly cannot conclude that these violations alone would justify a physical assault absent some evidence of physical resistance or some other indication that the degree of force utilized by the officer was proper under the circumstances.

■ Because we must accept appellant's version of the incident, and therefore assume that no additional provocation took place, the only remaining question is whether appellant has stated a proper claim for relief. Martinez's misconduct alone certain-

---

**2.** Also supporting the motion for a summary judgment was a nurse's report which stated that appellant had "slight redness of [the] right wrist," but "no deformity, redness or swelling . . . of [the] scrotal area" even though the "inmate stated he has tenderness to testicles."

**3.** By far the better practice, even in a prison inmate's suit where communication with the

plaintiff is a little burdensome, would be to obtain the plaintiff's *own* specific and particularized statement of the precise events alleged to have taken place.

**4.** The district court's order states that "plaintiff at the Proceeding admitted his failure to follow the guard's orders to leave the jobbing shop area and to give him the keys."

ly does not bar his claim. In *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973) (allowing a claim for relief under § 1983 for a beating violating the "shock the conscience" due process test),[5] the correctional officer had reprimanded the inmate for a claimed failure to follow instructions. In *Fowler v. Vincent*, 366 F.Supp. 1224 (S.D.N.Y.1973), the district court sustained the sufficiency of the inmate's complaint despite the finding at a superintendent's hearing that the prisoner had assaulted the correctional officer. *See also McCargo v. Mister*, 462 F.Supp. 813 (D.Md.1978); *Vargas v. Correa*, 416 F.Supp. 266 (S.D.N.Y.1976) (excessive use of force not justifiable as an attempt to maintain discipline). In this respect, we think it significant that as a result of the incident at bar, according to the defendants' memorandum submitted to the court below,

> Officer Rosado was suspended from duty, without pay on April 28, 1978 through May 31, 1978, after it was determined that he used excessive force. Rosado was reassigned to Green Haven Correctional Facility effective June 1, 1978 and will not be considered for future reassignment to the Ossining Correctional Facility. Officer Rosado is presently serving a 12 month disciplinary evaluation period from June 1, 1978 through May 31, 1979, during which time his services will be terminated without further appeal in the event that the Department of Correctional Services determines his services to be unsatisfactory as a result of similar conduct.

The principal material issue here is whether excessive force was used. This issue remains in factual dispute. As stated in *Johnson v. Glick, supra*, in the due process, as opposed to the Eighth Amendment, context

a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

481 F.2d at 1033. It follows from the foregoing that the grant of summary judgment must be reversed. The amended complaint stated a ground for relief under *Johnson v. Glick, supra. See also Inmates of Attica Correctional Facility v. Rockefeller*, 453 F.2d 12 (2d Cir. 1971); *Tolbert v. Bragan*, 451 F.2d 1020 (5th Cir. 1971); *Wiltsie v. California Department of Corrections*, 406 F.2d 515 (9th Cir. 1968). Moreover, when verified by appellant, it sufficiently contradicted appellee's affidavits.[6]

Judgment reversed and remanded.

---

5. Judge Friendly, for the panel majority in *Johnson v. Glick*, was very careful to point out that § 1983 is not coextensive with the common law of battery. 481 F.2d at 1033.

6. The remaining disputes of fact regarding the warden, Dalsheim, concern the degree of his knowledge of Rosado's alleged violent tendencies, as well as the sufficiency of his admitted

efforts to reassign the guard due to the latter's known "interpersonal difficulties." *Cf. Johnson v. Glick, supra*, 481 F.2d at 1034 (dismissing claim against warden in part because of a lack of evidence that "there had been a history of previous episodes requiring the warden to take therapeutic action").