Christopher STINSON, Plaintiff,

v.

SHERIFF'S DEPT. OF SULLIVAN COUNTY, Sheriff Robert J. Flynn, Under Sheriff Forsbach, Officer Hopkins, Officer Sherwood, Officer Herbert and Officer Billy Parks, Defendants.

No. 79 Civ. 1182.

United States District Court, S. D. New York.

Sept. 8, 1980.

Christopher Stinson, pro se.

D'Amato & Lynch, New York City, for defendants; Robert E. Meshel, Thomas F. Breen, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Christopher Stinson, a New York State prisoner, brought this suit *pro se* against defendants, the Sheriff's Department of Sullivan County, Sheriff Robert J. Flynn, Under Sheriff Forsbach, and Officers Hopkins, Sherwood, Herbert and Parks of that Department, for damages allegedly arising out of a series of incidents from May 1975 to January 1977 at the Sullivan County Jail. Alleging causes of action under 28 U.S.C., section 1343(3) and 42 U.S.C., section 1983, plaintiff contends that defendants violated his constitutional rights protected under the First, Eighth and Fourteenth Amendments. Defendants move for summary judgment dismissing the complaint. Plaintiff counters with his own "motion for summary judgment," which merely cites cases on which he relies without disputing any of the allegations put forth by defendants in their affidavits and exhibits. Plaintiff's only allegations of fact are thus contained in his verified complaint and are accepted for purposes of this motion.[1]

In a somewhat discursive manner, plaintiff alleges a series of physical attacks of varying severity and threats by named defendants and others. He further alleges

that unnamed officials tampered with his mail, that he was maliciously placed in solitary confinement for 240 days, and that he was given inadequate medical attention.[2]

Defendant Forsbach's affidavit in support of this motion rebuts these allegations with some specificity based in some measure upon plaintiff's answers to interrogatories and his sworn deposition. Forsbach asserts that all defendants in good faith followed the rules of the State Department of Correction at all times with respect to the alleged use of physical force. As for the specific instances of assault, Forsbach offers explanations, supported by exhibits from prison records, ranging from misidentification of guards to doctors' reports on plaintiff's condition. Forsbach asserts that Stinson's "quarrelsome and uncooperative nature" and predilection for getting into fights with fellow inmates required his placement in solitary confinement and that Stinson was advised orally of the reason for such removal and of his right to file a grievance.[3] Finally, Forsbach asserts that the jail is in compliance with the terms of a consent order signed by Judge Werker,[4] and thus there is no basis for Stinson's charges concerning mail, medical attention and lack of adequate facilities.

*Statute of Limitations*

 This action was commenced March 6, 1979. Some of plaintiff's claims are thus barred by the statute of limitations. In actions under section 1983, the "most appropriate" state statute of limitations is applied.[5] New York has applied the three–

---

1. Our Court of Appeals has held that, although "the better practice, even in a prison inmate's suit where communication with the plaintiff is a little burdensome, would be to obtain the plaintiff's *own* specific and particularized statement of the precise events alleged to have taken place," nonetheless a "*verified* complaint can, in some circumstances, be treated as an affidavit under Fed.R.Civ.P. 56(e)." *Martinez v. Rosado*, 614 F.2d 829, 830 n.1 & 831 n.3 (2d Cir. 1980) (emphasis in original).

2. Plaintiff has alleged no facts in support of other purported constitutional violations–for example, "denial of political rights," "being religiously and racially discriminated against,"

"denial of being able to take care of my privacy and personal appearance," "being forced to live in a [sic] inhuman jail condition during pre–trial confinement." Plaintiff's Statement of Claim at 4–5.

3. Forsbach Affidavit at ¶¶ 12, 13.

4. *Lucas v. Wasser*, No. 76–1057, Consent Order (S.D.N.Y. Sept. 30, 1976).

5. *Cf. Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) (§ 1981 action).

year statute of Civil Practice Law and Rules, section 214(2), in section 1983 suits against individuals.[6] Recently, our Court of Appeals extended the reach of this three–year statute to section 1983 actions against sheriffs and municipalities despite the existence of shorter, more specific state statutes for actions against them.[7] Inasmuch as plaintiff filed this complaint on March 6, 1979, summary judgment is granted with respect to any claim arising before March 6, 1976. Thus we consider only those claims based upon allegations of occurrences after March 6, 1976.

■ With respect to such remaining claims, the defendants' motion must be viewed in light of the liberal construction accorded to pleadings of a *pro se* plaintiff.[8] Still, this standard is not without limits, and all normal rules of pleading are not absolutely suspended.[9] Thus, although the burden is on the movant to show the absence of genuine issues of fact on a motion for summary judgment under Rule 56, the opposing party may defeat the motion by the presentation of facts raising a triable issue.[10]

Defendants have here submitted detailed affidavits with exhibits in support of their motion. Plaintiff, on the other hand, although granted two thirty–day extensions to respond and apparently familiar with at least the rudiments of pre–trial procedure, has not produced any facts other than reliance upon his averments set forth in the complaint to controvert defendants' factual allegations; rather, resting on his verified complaint,[11] he "answers" with a mere recapitulation of the constitutional violations alleged. Stinson can thus avoid summary judgment only if the allegations in his complaint are sufficient to suggest that he can prove a "set of facts in support of his claim which would entitle him to relief."[12] For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part.

It is axiomatic that, to state a cause of action under section 1983, the violations alleged must be of constitutional dimensions. This "constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery . . . and still less is it as extensive as that afforded by the common law tort action for

---

**6.** *Leonhard v. United States*, 633 F.2d 599, at 615 616 (2d Cir. 1980) (citing cases).

**7.** *Taylor v. Mayone*, 626 F.2d 247, 252–253 (2d Cir., 1980) (three–year limit preferred over more specific limit of one year, ninety days of CPLR § 215(1)); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 449 (2d Cir. 1980) (three–year limit preferred over more specific limit of one year of N.Y. Gen. Mun. Law § 50–i(1)).

**8.** *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Frankos v. LaVallee*, 535 F.2d 1346, 1347 (2d Cir.), *cert. denied*, 429 U.S. 918, 97 S.Ct. 310, 50 L.Ed.2d 284 (1976).

**9.** *Mignone v. Vincent*, 411 F.Supp. 1386, 1388 (S.D.N.Y. 1976) ("the absence of any response at all to the factual showing adverse to the plaintiff's pleading, renders summary judgment appropriate"); *Williams v. Halperin*, 360 F.Supp. 554, 556 (S.D.N.Y. 1973); *Jeffery v. Malcolm*, 353 F.Supp. 395, 399 (S.D.N.Y. 1973); *Morgan v. Sylvester*, 125 F.Supp. 380, 390 (S.D.N.Y. 1954), *aff'd per curiam*, 220 F.2d 758 (2d

Cir.), *cert. denied*, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955).

**10.** *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir.1970) (response to summary judgment motion must set forth specific facts showing genuine issue for trial); *Morpurgo v. United States*, 437 F.Supp. 1135, 1137 (S.D.N.Y.1977), *aff'd*, 580 F.2d 1045 (2d Cir.), *cert. denied*, 439 U.S. 1000, 99 S.Ct. 606, 58 L.Ed. 2d 675 (1978) (movant entitled to summary judgment where opposing party simply reiterates conclusory allegations rather than factual foundations); *Miller v. Schweikart*, 413 F.Supp. 1062, 1068 (S.D.N.Y.1976) (burden on opposing party to show plausible ground to maintain cause of action in order to avoid purposeless trial); *Morgan v. Sylvester*, 125 F.Supp. 380, 390 (S.D.N.Y.1954), *aff'd per curiam*, 220 F.2d 758 (2d Cir.), *cert. denied*, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955). *See also Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975); *Beal v. Lindsay*, 468 F.2d 287, 291 (2d Cir. 1972).

**11.** *See* note 1 *supra.*

**12.** *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

assault."[13] Stinson charges that the repeated beatings, sometimes with blackjacks or pistols, and lack of medical attention amount to denial of due process under the Fourteenth Amendment and cruel and unusual punishment in violation of the Eighth Amendment.

*Beatings*

■ The alleged beatings, even considered in light of Stinson's proclivities as a troublemaker, may constitute a claim for relief under section 1983. As Judge Friendly has stated:

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.[14]

Here, defendants, in response to the various allegations, have denied using force on Stinson, justified any such use by demonstrating a need to maintain order, or shown a misidentification of guards or dates. However, Stinson alleges excessive force in many instances. Accordingly, with the issue in dispute, summary judgment is foreclosed under the *Johnson v. Glick* test.[15] Misidentification of dates or guards, similarly, is a triable issue of fact.

*Inadequate Medical Attention*

■ The appropriate standard governing Stinson's allegations about inadequate medical attention is whether defendants showed "deliberate indifference to a prisoner's serious illness or injury . . . ."[16] Thus, "a plaintiff must offer proof of more than mere negligence to prevail . . . ."[17] Stinson has failed in part to establish the requisite severity and deliberate indifference to maintain this cause of action. Although the allegation of an injury to plaintiff's eye is not cognizable in this action because of the statute of limitations,[18] Stinson also alleges consequent inadequate medical attention after March 6, 1976. In this regard, however, his vague claims of head pains and pain and suffering attributed to his eye injury, especially in light of a later doctor's report showing his eye to be in excellent condition,[19] do not rise to the level of "serious" medical injury. As to these claims, then, summary judgment is granted in favor of the defendants.

His claim of not receiving medical attention for alleged bruises and lacerations, while not specifically alleged, appears to be

---

13. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973).

14. *Id.* This oft–cited test has recently been followed in *Martinez v. Rosado*, 614 F.2d 829, 832 (2d Cir. 1980).

15. *Martinez v. Rosado*, 614 F.2d 829, 832 (2d Cir. 1980).

16. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). This standard first developed in this Circuit. *See McCabe v. Nassau County Medical Center*, 453 F.2d 698, 704 (2d Cir. 1971); *Martinez v. Mancusi*, 443 F.2d 921, 924 (2d Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971); *Johnson v. Marton*, 55 F.R.D. 282 (S.D.N.Y. 1972).

17. *Johnson v. Harris*, 479 F.Supp. 333, 336 (S.D.N.Y. 1979). *See Arroyo v. Schaefer*, 548 F.2d 47, 49 (2d Cir. 1977) (plaintiff must show evil intent, recklessness, or deliberate indifference). This high standard is required because section 1983 does not authorize a federal court to interfere with ordinary medical or disciplinary procedures of state prisons. *E. g., Church v. Hegstrom*, 416 F.2d 449 (2d Cir. 1969).

18. Plaintiff's claim for an eye injury is based upon an alleged assault that occurred on December 25, 1975, following which he instituted, in January, 1976, an Article 78 proceeding in the Supreme Court of the State of New York "seeking relief of optometrist [sic]."

19. Defts' Exh. M.

related to his assault claims, referred to above; to the extent the latter may be established, the trier of fact might conclude that these alleged injuries were sufficiently "serious" to have required medical assistance and that there was a wanton disregard therefor. Thus, summary judgment is denied as to the claims concerning bruises and lacerations.

*Mail Tampering*

■■ Summary judgment is granted to the defendants with respect to Stinson's claims of tampering with his mail. He alleges only a hearsay statement by his preacher that his letters to the preacher "were tampered with and held for at least a month." No explanation is offered for the failure to submit an affidavit by the preacher. Even if plaintiff's hearsay statement were accepted as true, this does not state a cause of action for which relief can be granted. Inspection of prisoners' mail under appropriate circumstances is constitutional;[20] further, Stinson has not even suggested any damage suffered as a result of this one incident.[21] Moreover, except for the one hearsay statement, plaintiff has failed in any respect to controvert defendants' affidavits that his incoming and outgoing mail, was regularly delivered and that communications with the courts and his lawyers were neither inspected nor tampered with in any respect.

*Solitary Confinement*

■■ Summary judgment is denied with respect to the conditions of Stinson's placement in solitary confinement. Although such segregation does not of itself violate the Constitution, it must be imposed for proper disciplinary purposes.[22] Defendants justify using solitary confinement based on Stinson's prison behavior as a chronic troublemaker involved in fights with other inmates.[23] While Stinson does not directly challenge the allegations of his troublemaking proclivities, he responds that his solitary confinement was in retaliation for his complaints to state authorities and that he was so informed by defendant Forsbach.[24]

On the other hand, no genuine issue of fact appears with respect to the general conditions of plaintiff's confinement other than the specific allegations of assault, lack of medical care, and mail tampering discussed above. Stinson alleges, without any factual support, being forced to live in an "inhuman" jail environment during pre–trial confinement. In response, in addition to describing the adequacy of conditions in their Rule 9(g) statement and defendant Forsbach's affidavit, defendants' counsel examined Stinson in great detail on this subject during a deposition. Stinson's statements there support defendants' position that the conditions were adequate.[25] Summary judgment must thus be granted as to this claim.

---

**20.** *Wolff v. McDonnell*, 418 U.S. 539, 574–77, 94 S.Ct. 2963, 2983–85, 41 L.Ed.2d 935 (1974); *Morgan v. Montanye*, 516 F.2d 1367, 1371–72 (2d Cir. 1975), *cert. denied*, 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976); *Sostre v. McGinnis*, 442 F.2d 178, 199–201 (2d Cir. 1971)(en banc), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972).

**21.** *Cf. Morgan v. Montanye*, 516 F.2d 1367, 1370–71 (2d Cir. 1975), *cert. denied*, 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976) (no indication of damage suffered from single incident alleged).

**22.** *Cf. Sostre v. McGinnis*, 442 F.2d 178, 188–90 (2d Cir. 1971)(en banc), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972)(segregated confinement violates due process if imposed as punishment for political thought or past or threatened litigation).

**23.** Forsbach Affidavit at ʻ 12.

**24.** Stinson Deposition at 47 (appearing as Defts' Exh. Q).

**25.** "[T]he Plaintiff was provided with a cot, a mattress, a blanket, sheets, towels, toilet paper and three meals a day plus coffee and doughnuts in the later evening. Sufficient electrical lighting, as well as, sunlight, was provided and recreation was furnished Sunday through Friday for one hour a day. Access to showers was provided daily." Defts' Rule 9(g) Statement at ʻ 7. Stinson's statements at the deposition, while not precisely agreeing on every point, substantially support defendants' statement. *See* Stinson Deposition at 51–58 (appearing as Defts' Exh. Q).

*Liability of Department*

 We turn finally to considering whether the Sheriff's Department and Sheriff Flynn, in his supervisory capacity, can be liable under the facts alleged. The rule that a municipality is not liable in a section 1983 damage action under the doctrine of *respondeat superior* survives today; however, a municipality can be held directly liable for its own acts or omissions pursuant to an official custom or policy.[26] Such direct liability may result if supervisory officials are either grossly negligent or deliberately indifferent to the deprivation of the plaintiff's constitutional rights.[27] This "issue of authorization, approval or encouragement is generally one of fact, not law. For example, where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts."[28] Moreover, the municipality may not assert the good faith of its employees as a defense.[29]

 Here, Stinson has not only alleged a series of assaults by sheriffs in the Sheriff's Department but also made numerous complaints about his treatment through state administrative and judicial channels. Indeed, defendants acknowledge that a representative of the State Department of Correction investigated one of the complaints. This suggests that the Sheriff's Department and Sheriff Flynn were, or should have been, aware that acts offensive to the Constitution may have been occurring.[30] If so, and if the trier of fact were to conclude that any action or inaction with respect to Stinson's complaints amounted to "deliberate indifference or to tacit authorization of the offensive acts," then an inference of an official custom or policy may be warranted and, depending upon all the surrounding facts and circumstances, the Sheriff's Department may be held liable for any unconstitutional acts committed by subordinates. Although the *Turpin v. Mailet* standard quoted above may be difficult to meet, it cannot be said at this stage that plaintiff will be unable to meet it.

The Department cannot, however, be held liable on the basis of *respondeat superior* or for acts of officers not in its employ or control. Thus, it is not liable for the alleged assault of May 25, 1976 by Officer Ferrior, who all parties agree is not associated with the Department, and so that claim is dismissed.

Defendants' motion for summary judgment is granted in part and denied in part.

---

26. *See Owen v. City of Independence,* 445 U.S. 622, 647–657 & 655 n.39, 100 S.Ct. 1398, 1414–1419 & 1418 n.39, 63 L.Ed.2d 673 (1980); *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–2038, 56 L.Ed.2d 611 (1978); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–69, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142 (1970); *Turpin v. Mailet,* 619 F.2d 196, 199–202 (2d Cir. 1980); *Owens v. Haas,* 601 F.2d 1242, 1245–47 (2d Cir. 1979). *See also Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

27. *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir. 1979).

28. *Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir. 1980).

29. *Owen v. City of Independence,* 445 U.S. 622, 647–657, 100 S.Ct. 1398, 1414–1419, 63 L.Ed.2d 673 (1980).

30. *See* Forsbach Affidavit at ¶ 13. The investigator concluded that Stinson's assault charges were groundless; however, that determination, even if it were binding on this Court, does not cover all the alleged incidents in this lawsuit. Moreover, Stinson claims that he "continuously warned the defendents [sic] that my right's [sic] were being violated." Plaintiff's Answer to Interrogatory No. 3.