**Helen PRATT, Plaintiff**

v.

**Blanche BERNSTEIN, et al., Defendants.**

**No. 79 Civ. 3980 (RJW).**

United States District Court, S. D. New York.

Dec. 22, 1981.

---

Helen Pratt, plaintiff pro se.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants by Susan R. Rosenberg, Asst. Corp. Counsel, New York City.

ROBERT J. WARD, District Judge.

This action alleges violations of the United States Constitution and of New York tort law. Plaintiff, appearing pro se, after having originally been represented by counsel, is Helen Pratt, a citizen of the State of New York. Defendants are the City of New York, the Human Resources Administration of the City of New York ("HRA"), and six individual employees of HRA. Each of the six individual defendants is sued both individually and in his or her official capacity. The jurisdiction of the Court to hear this action is founded on 28 U.S.C., Section 1343, and principles of pendent jurisdiction.

The complaint seeks an order granting plaintiff certain declaratory, injunctive, and monetary relief. The Court, having heard the testimony adduced during the two days of trial, having examined the exhibits received in evidence, having reviewed its contemporaneous trial notes, which include the Court's appraisal of the witnesses and their demeanor, and having evaluated the pertinent legal principles, finds, upon the totality of the testimony and the documentary evidence, that plaintiff is not entitled to any of the relief sought in her complaint and that judgment must be entered in favor of defendants. This oral decision constitutes the Court's findings of fact and conclusions of law, in accordance with Rule 52, Fed.R.Civ.P.

## BACKGROUND

Plaintiff was employed by HRA as a clerk from January 17, 1967, until June 2, 1978. On April 1, 1977, plaintiff was working in the central files section on the third floor of the East Harlem Income Maintenance Center, located in Manhattan. On that day, defendants Paul Hutchinson and Norman Hicks, then employed by HRA as Special Patrolmen, were assigned to the East Harlem Income Maintenance Center. As Special Patrolmen, the duties of Hicks and Hutchinson were generally to maintain order and to act as security guards in their areas of responsibility. On April 1, 1977, the central files section was within the area of responsibility of Hicks and Hutchinson.

The other individual defendants occupied the following job positions with HRA on April 1, 1977: (1) Blanche Bernstein was Commissioner of the New York City Department of Social Services and Administrator of HRA; (2) Robert T. Heegan was HRA's "Principal Special Investigator"; (3) Wilburn Holland was the Director of the East Harlem Income Maintenance Center; and (4) Delores Page was the office manager of the East Harlem Income Maintenance Center.

At about 4 p. m. on April 1, 1977, plaintiff, while working in the central files section, became involved in a dispute with Maria Ortiz, one of her co-workers. This dispute concerned a desk blotter that plaintiff had placed on her desk. The noise created by the dispute could be heard throughout the central files section.

At the time of the dispute, defendant Hutchinson was at his post on the third floor of the East Harlem Income Maintenance Center and heard loud noises coming from the vicinity of plaintiff's desk in the central files section. His job duties included maintaining order and security in the central files section. Accordingly, Hutchinson investigated the noise. When he approached plaintiff's desk, plaintiff said to him, "Get the hell away from here." Hutchinson asked plaintiff what the problem was. Plaintiff did not directly respond. Instead, she began addressing Hutchinson in an abusive, loud manner. Hutchinson tried to calm plaintiff. However, plaintiff grew more and more agitated, and continued shouting at Hutchinson in a voice that could be heard throughout the central files section.

After about ten or fifteen minutes of endeavoring to calm plaintiff, Hutchinson, who still had been unable to ascertain why plaintiff was so upset, but who had smelled liquor on plaintiff's breath, asked plaintiff to accompany him to the patrolmen's room on the third floor of the East Harlem Income Maintenance Center. Plaintiff refused, became even more upset, and then struck Hutchinson. Hutchinson then placed plaintiff under arrest. Special Patrolmen such as Hutchinson are authorized to arrest persons who commit crimes in their presence.

At approximately the time when defendant Hutchinson placed plaintiff under arrest, defendant Hicks arrived on the scene. He assisted Hutchinson in taking plaintiff to the patrolmen's room subsequent to her arrest. In order to overcome plaintiff's resistance, Hutchinson and Hicks were forced to pick her up and to carry her from her desk to the patrolmen's room.

Plaintiff was held in the patrolmen's room for a while, then transferred to another patrolmen's room located on the first floor of the East Harlem Income Maintenance Center, and thereafter taken to the 25th Police Precinct in a New York City police car. This occurred at about 5:30 p. m. Plaintiff was handcuffed to facilitate her transfer to the 25th Precinct. When plaintiff told defendant Hicks that the handcuffs were too tight, he loosened them. At the 25th Precinct, plaintiff was given a summons to appear in New York City Criminal Court on a later date, and at about 9 p. m. left the precinct for home.

Plaintiff was charged with violation of New York Penal Law, Sections 195.05 (obstructing government administration), 205.30 (resisting arrest), 240.20 (disorderly conduct), and 240.25 (harassment). On January 11, 1978, the charges against plaintiff were "adjourned in contemplation of dismissal" pursuant to N.Y.Crim.Proc.Law, Section 170.55. The charges were subsequently dismissed on July 11, 1978.

Shortly after April 1, 1977, HRA commenced a proceeding, pursuant to N.Y.Civ.Serv.Law, Section 75, to terminate plaintiff from her position at HRA. Hearings were held on three days in 1977. The proceeding was based in large part on the events of April 1, 1977, but also on two other alleged incidents of job misconduct by plaintiff. On January 12, 1978, the hearing officer recommended plaintiff's termination. By a letter dated June 2, 1978, defendant Bernstein endorsed this recommendation and terminated plaintiff's employment by HRA as of that date. This letter informed plain-

tiff of her right to administrative and judicial review of this decision. Plaintiff appealed the decision to the New York City Civil Service Commission; the appeal was denied on January 26, 1979.

## DISCUSSION

Plaintiff commenced this action by filing a complaint in this court on July 31, 1979. The complaint sets forth two basic theories of liability. First, relying upon 42 U.S.C., Section 1983, plaintiff contends that defendants' conduct, as alleged in the complaint, deprived plaintiff of rights secured by the United States Constitution. Second, plaintiff argues that defendants injured her by conduct in violation of New York tort law. The Court deals with each of these theories in turn.

### Section 1983 Claims

Under 42 U.S.C., Section 1983 ("Section 1983"), "Every person who, under color of any statute . . . of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ."

In her complaint and her arguments to the Court, plaintiff has relied on a number of distinct theories to support her contention that defendants violated her constitutional rights and thus are liable to her under Section 1983. Plaintiff's first theory of Section 1983 liability may be dealt with fairly briefly. She alleges that defendants Hicks and Hutchinson sexually abused her during the period in which she was under arrest, and contends that this sexual abuse violated her constitutional rights. The Court finds that the alleged instances of sexual abuse that form the predicate for this particular theory, which are supported only by plaintiff's uncorroborated testimony, have not been proven by a preponderance of the evidence. Accordingly, the Court cannot find in plaintiff's favor on this theory.

The remainder of plaintiff's theories of Section 1983 liability require a somewhat more extended analysis. The Court, by virtue of plaintiff's complaint and her oral arguments, understands plaintiff to rely on three remaining theories under Section 1983: First, she alleges that defendants Hutchinson and Hicks infringed her constitutional rights when they arrested and detained her on April 1, 1977. Second, she contends that these same defendants again violated her constitutional rights by causing criminal proceedings to be instituted against her later on that same day. Third, she alleges that she was deprived of her Fourteenth Amendment right to equal protection and of her constitutionally protected "property" interest in her job without due process of law when her employment by HRA was terminated.

■ The Court begins its discussion of these three claims by considering the claim relating to plaintiff's arrest. It is well settled that an individual's constitutional rights are infringed in the event he or she is arrested without probable cause. *Dominquez v. Beame*, 603 F.2d 337, 343 (2d Cir. 1979), cert. denied, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). Such an infringement is actionable under Section 1983. See *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). In order to make out a claim under Section 1983 for a constitutional violation based on an arrest without probable cause, the plaintiff is required to show that the arresting officer did not have knowledge of facts and circumstances sufficient to warrant a prudent man in believing that an offense had been committed. See *United States v. Edmonds*, 535 F.2d 714, 719 (2d Cir. 1976). Plaintiff has failed to make such a showing here.

■ At the time he arrested plaintiff, Hutchinson knew: (1) that one of his official functions was to maintain order and resolve disturbances in the central files section; (2) that he was, in walking to plaintiff's desk, in conversing with her, and in ordering that she accompany him to the patrolmen's room, attempting to maintain order and resolve a disturbance in the central files section; (3) that plaintiff had re-

fused to comply with his order, had continued to cause a disturbance in the central files section, and had struck him; and (4) that he is, as a Special Patrolman, authorized to arrest a person who commits a crime in his presence. Hutchinson, having knowledge of these facts and circumstances, believed, in the Court's view reasonably, that plaintiff had committed in his presence a violation of N.Y.Penal Law, Section 195.05. This section, entitled "Obstructing Governmental Administration," provides as follows:

> "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act."

The Court thus finds that Hutchinson, when he arrested plaintiff, had probable cause to do so. Plaintiff thus has failed to show, on the theory that there was no probable cause for her arrest, that her constitutional rights were violated when she was arrested and subsequently detained by defendants Hutchinson and Hicks.

 Under certain circumstances, the arrest of an individual may be found to have been in violation of the individual's constitutional rights, notwithstanding the fact that there was probable cause for the arrest. In order to make out such a claim, the plaintiff must show that the conduct of the arresting officers in making the arrest was so offensive, under the circumstances, as to "shock the conscience" of the trier of fact. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Plaintiff has failed to make such a showing here.

 In order to determine whether the conduct of the arresting officers in this case was such as to "shock the conscience," the Court must consider the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline. *Martinez v. Rosado*, 614 F.2d 829, 832 (2d Cir. 1980). The Court finds that plaintiff's violent and abusive conduct created a need for significant force to be used to restrain her at the time of her arrest and during her detention subsequent to her arrest. The force that the officers used to arrest plaintiff, while significant, was not excessive in light of the need for force that plaintiff's conduct had created. While the arresting officers' use of force caused plaintiff to suffer injuries that were more than imaginary, these injuries were not excessive in light of the need for force created by plaintiff's conduct. In using force to arrest and detain plaintiff, the arresting officers did not act for the specific purpose of injuring plaintiff, but rather as part of a good faith effort to restore order in the central files section and to transport plaintiff to the precinct for booking. Under these circumstances, the Court does not find that plaintiff was arrested in a manner that "shocks the conscience," and accordingly finds that plaintiff has failed to show that defendants Hutchinson and Hicks infringed her constitutional rights when they arrested her on April 1, 1977.

Plaintiff having failed to prove that her constitutional rights were violated when she was arrested, the Court therefore turns to plaintiff's next theory under Section 1983, namely, her claim that Hutchinson and Hicks violated her constitutional rights by causing criminal proceedings to be instituted against her on April 1, 1977. It is settled in this Circuit that institution of a groundless prosecution can, in certain circumstances, violate the prosecuted individual's constitutional rights and that such a violation may be remedied through a Section 1983 action. *Pyles v. Keane*, 418 F.Supp. 269, 276 (S.D.N.Y.1976). But cf. *Cook v. Houston Post*, 616 F.2d 791, 794–795 (5th Cir. 1980); *Rosales v. Lewis*, 454 F.Supp. 956, 960 (S.D.Iowa 1978) (both cases holding that claim of malicious prosecution cannot, standing alone, form the basis for a

Section 1983 claim). The Court of Appeals for this Circuit has held, however, that a plaintiff cannot make out a successful claim on this theory unless he or she can show that the proceeding against the plaintiff terminated in some manner indicating that the plaintiff was not guilty of the offense charged. *Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir. 1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). Under *Singleton*, this standard can only be satisfied if the plaintiff shows that the proceeding of which he or she complains was terminated "in the plaintiff's favor," as that term is used in state law to define the tort of malicious prosecution. *Id.* As is explained *infra* in connection with the Court's discussion of plaintiff's state law claims, where, as here, a criminal case is "adjourned in contemplation of dismissal," the case has not, under New York's definition of malicious prosecution, been terminated "in favor" of the prosecuted party. On this basis, the Court holds that the adjournment in contemplation of dismissal that occurred here did not, as required by *Singleton*, terminate the case against plaintiff in a manner indicating that she was not guilty of crimes charged. As a result, plaintiff has failed to show that defendants Hutchinson and Hicks deprived her of her constitutional rights by causing criminal proceedings to be commenced against her.

■ Plaintiff has failed on this theory for a second reason. A plaintiff who claims that he or she suffered a deprivation of his or her federal constitutional rights by virtue of a defendant's institution of criminal proceedings against him or her must show that the defendant acted maliciously in instituting the prosecution, that is, with the intent to do harm to the prosecuted party rather than with the objective of bringing a criminal to justice. *Lopez v. Modisitt*, 488 F.Supp. 1169, 1174 (W.D.Mich.1980). Here, there was, for the reasons already discussed, probable cause to institute criminal proceedings against plaintiff. Plaintiff has not proved by a preponderance of the evidence that defendants Hicks and Hutchinson acted with intent to injure her, rather than with intent to act upon this probable cause, when they instituted criminal proceedings against plaintiff. For this reason, in addition to plaintiff's failure to show that the criminal proceeding terminated "in her favor," within the legal meaning of that term, plaintiff has failed to show that defendants' institution of criminal proceedings against her deprived plaintiff of her constitutional rights.

■ Having found that plaintiff has failed to prove a violation of her federal constitutional rights in connection with her criminal prosecution, the Court turns to her final theory of Section 1983 liability, namely, her argument that she was deprived of her Fourteenth Amendment right to equal protection and of her constitutionally protected "property" interest in her job without due process of law when her employment by HRA was terminated. Insofar as this claim is founded on the equal protection clause of the Fourteenth Amendment, it must be rejected because plaintiff has failed to allege class-based discrimination or to prove any facts from which the Court might find class-based discrimination. See *Ellentuck v. Klein*, 570 F.2d 414, 430 (2d Cir. 1978); *Benjamin v. Macchiarola*, 79 Civ. 5985 (RJW), slip op. at 4 (S.D.N.Y. Oct. 17, 1980), aff'd mem., 652 F.2d 53 (2d Cir.), cert. denied, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981). To the extent plaintiff argues that she has been deprived of a constitutionally protected "property" interest without due process of law, her claim is not supported by the facts of the case. Plaintiff, upon being terminated from her employment by HRA, was accorded a full administrative hearing. The hearing officer determined that plaintiff's termination was not improper. Plaintiff was informed of her right to appeal that decision. Thus, even if the Court were to hold that plaintiff had a constitutionally protected "property" interest in her job with HRA, the simple fact is that she was accorded all the process that she was constitutionally due in connection with the deprivation of that putative interest.

The foregoing analysis demonstrates that all the theories pursuant to which plaintiff contends that her federal constitutional rights were violated by defendants are insufficient either in law or under the facts of this case. Before turning to a discussion of plaintiff's state law claims, the Court observes that a number of the defendants have individual defenses that largely or entirely preclude an award of damages under Section 1983 in their respect. With regard to defendants City of New York and HRA, Section 1983 liability is precluded by virtue of the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There, the Supreme Court held that a municipality or a municipal agency may be sued for damages under Section 1983 only where a constitutional violation has been committed pursuant to an official policy or custom. *Id.* at 694, 98 S.Ct. at 2037. No such policy or custom has been proven here. With respect to defendants Bernstein, Heegan, Holland, and Page, a Section 1983 damage award based on any acts except her dismissal is precluded by virtue of the rule that damage awards under Section 1983 must be predicated on the defendant's personal responsibility for the acts that deprived the plaintiff of his or her constitutional rights. See *Hupart v. Board of Higher Education*, 420 F.Supp. 1087, 1108–09 (S.D.N.Y.1976). Since these four defendants did not directly participate in the arrest and detention of plaintiff, or in the institution of criminal proceedings against her, and since they have not been proven to have inadequately supervised those individuals who did directly participate in these acts, they cannot be found liable for those acts under Section 1983. Finally, with respect to defendant Hutchinson, Section 1983 damages plainly cannot be awarded for the simple reason that he has never been served with the complaint filed in this action.

The Court notes that defendant Hicks died during the pendency of this action, and that some question has arisen as to whether the action thereby abated in his regard. Pursuant to 42 U.S.C., Section 1988, state survival statutes are applicable to civil rights actions brought under Section 1983. *Duchesne v. Sugarman*, 566 F.2d 817, 821 n.2 (2d Cir. 1977). Under New York law, claims for "personal injury," which term includes claims for assault, battery, false imprisonment, and malicious prosecution, see N.Y.Gen.Constr.Law, Section 37–a, survive the death of the person liable. See N.Y.Est., Powers & Trust Law, Section 11–3.2(a). Thus, plaintiff's Section 1983 claims against defendant Hicks survived his death. Unfortunately for plaintiff, as the Court described earlier, plaintiff's Section 1983 claims against defendant Hicks do not survive a consideration of the facts of the case and the governing substantive legal principles.

For the forgoing reasons, all of plaintiff's Section 1983 claims must be dismissed against each of the defendants. The Court accordingly turns to plaintiff's state law claims.

### State Law Claims

Plaintiff, as noted, also relies on New York tort law as a basis for defendants' alleged liability. Specifically, she asserts that defendants, by the conduct alleged in the complaint, committed the torts of assault, battery, false arrest, false imprisonment, defamation, malicious prosecution, and intentional infliction of emotional harm. All of these claims are barred by the statute of limitations. New York law provides the applicable statute of limitations. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1943). The period of limitations for claims founded in intentional tort is one year. N.Y.Civ.Prac.Law and Rules, Section 215.3.

Here, all of plaintiff's tort claims allege intentional torts. Her malicious prosecution claim accrued on July 11, 1978, the date of the dismissal of the criminal charges against plaintiff. See *Giglio v. Delesparo*, 46 A.D.2d 928, 928, 361 N.Y.S.2d 721, 723 (3d Dep't 1974). The other claims all accrued on April 1, 1977, the date of plaintiff's arrest. Thus, since plaintiff filed

118

her complaint in this court on July 31, 1979, more than one year after all plaintiff's intentional tort claims accrued, these claims are time-barred under N.Y.Civ.Prac.Law and Rules, Section 215.3.

██ The Court notes that plaintiff's hopes of prevailing on a state law theory would not be improved if, as is arguable, see *Drake v. City of Rochester*, 96 Misc.2d 86, 91–94, 408 N.Y.S.2d 847, 851–53 (Sup.Ct. Monroe Co. 1978), aff'd, 74 A.D.2d 996, 429 N.Y.S.2d 394 (4th Dep't 1980) the applicable period of limitations were the one year, ninety day, period that under New York law governs actions for personal injury against a municipality and its officers. See N.Y.General Mun.Law, Section 50–i. Were this the applicable statute, all of plaintiff's state tort claims would still be time-barred except for her malicious prosecution claim. The malicious prosecution claim would fail on the merits. Under New York law, the tort of malicious prosecution has four elements: (1) a criminal proceeding must have been instituted by the defendant against the plaintiff; (2) the proceeding must have been terminated in plaintiff's favor; (3) there must have been an absence of probable cause for the proceeding; and (4) the defendant's primary purpose in instituting the proceeding must have been malicious, rather than to bring a criminal offender to justice. *Martin v. City of Albany*, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1307 (1977). Here, as noted, the proceeding against plaintiff was terminated by an "adjournment in contemplation of dismissal." Such a termination is not "in plaintiff's favor" within the meaning of the second prong of the above-quoted test. *Singleton v. City of New York*, supra, 632 F.2d at 193; *Kenul v. Hollander*, 86 Misc.2d 466, 467–68, 382 N.Y.S.2d 650, 650–51 (Dist.Ct. Nassau Co. 1976). Also, the Court has previously found that defendants did not act with the malice required by the fourth prong of this test. Thus, even if plaintiff's state-law malicious prosecution claim were not time-barred, it would fail. For the foregoing reasons, all of plaintiff's state law claims must be dismissed against each of the defendants.

## CONCLUSION

Plaintiff has failed to prove by a preponderance of the evidence that any of the above named defendants either violated her federal constitutional rights or injured her in a manner violative of New York tort law. Thus, all of plaintiff's claims must be dismissed against each defendant. Judgment must therefore be entered in favor of defendants, in accordance with Rule 58, Fed. R.Civ.P. The parties shall bear their own costs. Settle final judgment on notice.

The foregoing constitutes the decision of the Court.