**Gloria ALBERTS, Plaintiff,**

v.

**The CITY OF NEW YORK, The New York City Police Department, P.O. James Ogletree and "John Doe" and "Jane Doe", the aforesaid names being fictitious, identities unknown to the plaintiff, Defendants.**

**No. 80 Civ. 7288 (KTD).**

United States District Court, S.D. New York.

Oct. 5, 1982.

---

Weingrad & Weingrad, P.C., New York City, for plaintiff; Stephen Weingrad, Leslie Devlin, New York City, of counsel.

Frederick A.O. Schwartz, Jr., Corp. Counsel, New York City, for defendants; John P. McCahey, Daniel E. Katz, New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

[1] Plaintiff initiated this $3.5 million lawsuit against the City of New York, the New York City Police Department and New York City Police Officers James Ogletree,

"Jane Doe" and "John Doe", pursuant to 42 U.S.C. § 1983, after her arrest on August 8, 1980, for disorderly conduct, harassment, and resisting arrest. The amended complaint[1] added causes of action for false arrest and assault and battery, and it requests punitive damages. Defendants' motions for judgment on the pleadings and default were denied leading to a non-jury trial on June 9, 1982.[2] The following shall constitute my findings of fact and conclusions of law.

## I.

On August 8, 1980 at approximately 9:30 p.m. a van driven by Kosmas Bidales was stopped for running a red light by Police Officers James Ogletree and Hillery Simmons who were in marked car patrol on Amsterdam Avenue near 168th Street. Ogletree left Simmons behind in the patrol car, walked to the driver's side of the van and asked to see Bidales' driver's license and registration.[3] Ms. Gloria Alberts, the plaintiff, was seated in the passenger side

of the van and was in the middle of a vociferous argument with Mr. Bidales when Officer Ogletree approached the van. The plaintiff, who was shouting obscenities when the van pulled over, now directed her foul language at the police officer. Trial Transcript at 46–48, 76. Ogletree warned Ms. Alberts that if she persisted in her verbal abuse he "was going to lock her up." Trial Transcript at 75. Ms. Alberts did not heed the officer's warning. Officer Ogletree then walked to the passenger side of the van to confront the plaintiff and to again warn her: "You keep on, I'm going to lock you up." Trial Transcript at 76. At that point Ms. Albert struck the officer in the face with her hand, the officer countered by striking her with his hand and Ms. Alberts struck back. Trial Transcript at 80. Officer Ogletree then told Ms. Alberts that she was under arrest and he opened the van door. Ms. Alberts refused to be led out of the van by the officer and to avoid him she moved into the space between the van seats simultaneously kicking the officer in the

1. Plaintiff's original complaint was dismissed against New York City by endorsement on April 9, 1981. An amended complaint was filed on April 29, 1981.

2. The plaintiff requested at trial that the pleadings be amended post-trial to conform to the proof pursuant to Fed.R.Civ.P. 15(b) to include a cause of action for a violation of Ms. Alberts' civil rights resulting from an allegedly unconstitutional strip search. Rule 15(b) requires that amendments be allowed when there is no evidence that prejudice to the objecting party will result. Prejudice to the defendants will result if plaintiff's section 1983 claim is amended to include the strip search. The defendants were unfairly surprised when this issue was raised at trial and became the primary focus of the plaintiff's case. Three terse references in plaintiff's notice of claim, the transcript of the New York City Hearing and in Ms. Alberts' deposition do not place the defendants on notice of this issue, especially when the strip search issue is absent from plaintiff's amended complaint and pre-trial order. Furthermore, the cases plaintiff cites in support of the unconstitutionality of the alleged strip search, *Sala v. County of Suffolk*, 604 F.2d 207 (2d Cir. 1979), *vacated*, 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980), *Salinas v. Breier*, 517 F.Supp. 1272 (E.D.Wis.1981), and *Tinetti v. Wittke*, 479 F.Supp. 486 (E.D.Wis.1979), *aff'd*, 620 F.2d 160 (7th Cir. 1980) are unpersuasive. In *Sala*, a woman charged with harassment

was strip searched pursuant to police procedure. Absent any evidence of bad faith by the defendant police officers and Suffolk County the section 1983 claim was dismissed. In *Salinas,* the strip search of a detainee's family and children was found violative of section 1983 and in *Tinetti,* the strip search of a nonmisdemeanor offender was also found inconsonant with section 1983.

Ms. Alberts was charged not only with disorderly conduct and harassment, violations under New York law, but also with resisting arrest, a class A misdemeanor which carries a sentence of up to one year of imprisonment. N.Y. Penal Law §§ 70.15(1), 205.30, 240.20, 240.25 (McKinney 1975 and 1981); Plaintiff's Exhibit 3. This distinguishes the instant case from the legal support proffered by the defendant. The lack of direct authority for the section 1983 claim, the abandonment by New York City of the strip search policy allegedly effected here, the uncertainty of the law in light of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and the prejudice to the defendants which will result if they are forced to defend this issue raised for the first time at trial, plaintiff's request for an amendment of the pleadings to conform to the evidence is denied.

3. Mr. Bidales was found guilty of running the red light and he was fined.

stomach and groin area. Trial Transcript at 80. At this point, to restrain the plaintiff, Ogletree punched Ms. Alberts with full force on her left cheek. This blow quieted the plaintiff. She was then placed under arrest for disorderly conduct, harassment of an officer, and resisting arrest, and transported to the 34th Precinct. At the station house, the plaintiff for the most part remained handcuffed except for her visit to the one bathroom available. Before being allowed to utilize the facilities, plaintiff underwent a visual strip search by a police matron in the empty bathroom. It was standard procedure within the police department at that time for all persons charged with a crime more serious than a violation to be strip searched. Trial Transcript at 104–05.

Shortly after Ms. Alberts returned from the bathroom she was transported by police car to Central Booking at 100 Centre Street for booking and fingerprinting. Trial Transcript at 27–29, 54. Officer Ogletree called Ms. Alberts' sister after their arrival and the plaintiff waited with the officer while he began to complete the paper work generated by the plaintiff's arrest. It was close to 2:00 a.m., August 9, 1980, before Ms. Alberts was released from custody and driven home by Mr. Bidales. Trial Transcript 30–31. Early that afternoon, Ms. Alberts went to Roosevelt Hospital to have her eye examined. The doctor at Roosevelt advised her to keep cold compresses on her eye and to see an ophthalmologist. An ophthalmologist at New York Hospital, which is affiliated with her employer, Cornell University Medical College, examined the plaintiff and prescribed drops to aid in the healing process. Trial Transcript at 35. Ms. Alberts has had no permanent damage from the injury and her vision is fully restored. As a result of this incident, Ms. Alberts missed two weeks of work and lost sick leave and vacation benefits.

The criminal complaint against Ms. Alberts eventually proceeded to a jury trial in February, 1981, on only the charges of disorderly conduct and harassment.[4] Ms. Alberts was found not guilty of all the charges.

## II.

Ms. Alberts now seeks over $3 million in damages from New York City, the New York City Police Department, and individual police officers, arising out of the alleged assault and battery and false arrest of the plaintiff. What began with the filing of a civilian complaint against Officer Ogletree, (Plaintiff's Exhibit 4), escalated into a full scale lawsuit. Before addressing the merits of Ms. Alberts' allegations, I must first resolve the threshold immunity issue raised by the defendants.

■ It is well settled that a municipality cannot be held liable in a section 1983 suit ·under the doctrine of *respondeat superior* for the torts of its employees, *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 663 n. 7, 691, 98 S.Ct. 2018, 2022 n. 7, 2036, 56 L.Ed.2d 611 (1978) ("Monell"), *see Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Tomarkin v. Ward,* 534 F.Supp. 1224, 1232 (S.D.N.Y.1982). However, a direct suit pursuant to section 1983 against a municipality is appropriate when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell,* 436 U.S. at 690, 98 S.Ct. at 2035; *Redcross v. County of Rensselaer,* 511 F.Supp. 364, 369 (N.D.N.Y.1981). In support of a direct suit against the City the plaintiff points to the now defunct policy or custom of the New York City Police Department to strip search all prisoners charged with a crime more serious than a violation. Plaintiff asserts that this official policy permits her direct suit against the City. As was discussed above, this strip search is not part of the instant case.[5]

---

**4.** Sometime between September 17, 1980, the date plaintiff was arraigned, and November 17, 1980, the charge of resisting arrest was dropped. Plaintiff's Exhibit 6.

**5.** *See supra* note 2.

Therefore, absent any further proof at trial of a constitutionally infirm policy or custom, the complaint is dismissed against defendant New York City.

■ The *Monell* analysis is equally applicable to the New York City Police Department. In order to maintain her suit against the Police Department, the plaintiff was obligated to prove at trial that Ms. Alberts' injuries resulted from a policy or custom of the New York City Police Department, or that policy-making officials of the Police Department were directly involved in her arrest. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), *DiGiovanni v. City of Philadelphia,* 531 F.Supp. 141, 144–45 (E.D.Pa.1982). This burden was not met. Furthermore, although plaintiff's amended complaint alleged otherwise, there was no evidence at trial establishing either negligent supervision of policemen or a Police Department policy to encourage lawless conduct. Accordingly, the complaint also must be dismissed as to this defendant. *See Redcross v. County of Rensselaer,* 511 F.Supp. at 372.

■ The remaining defendant is Police Officer James Ogletree. In essence, plaintiff argues that this officer's alleged false arrest and assault of Ms. Alberts was violative of section 1983. In recognition of the inherent discretion which must be afforded police officers to promote effective law enforcement, the law entitles a police officer "to qualified immunity from an assessment of damages against him if he acted with a reasonable and good faith belief that he had acted lawfully." *Street v. Cherba,* 662 F.2d 1037, 1039 (4th Cir. 1981). *See Butz v. Economou,* 438 U.S. 478, 496, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978); *Bivens v. Six Unknown Named Agents,* 456 F.2d 1339, 1341 (2d Cir. 1972).

■ Plaintiff unavailingly argues that her arrest lacked the requisite probable cause and therefore could not be defended on the basis of "reasonable and good faith belief" otherwise. Ms. Alberts has the burden of showing "that the arresting officer did not have knowledge of facts and cir-

cumstances sufficient to warrant a prudent man in believing that an offense had been committed." *Pratt v. Bernstein,* 533 F.Supp. 110, 114 (S.D.N.Y.1981). This burden has not been met. The arrest of Ms. Alberts was justified by her behavior and was based on probable cause. The statutes proscribing disorderly conduct and harassment provide:

A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:

1. He engages in fighting or in violent, tumultuous or threatening behavior; or

2. He makes unreasonable noise; or

3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or

4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or

5. He obstructs vehicular or pedestrian traffic; or

6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or

7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.

N.Y. Penal Law § 240.20 (McKinney 1980)

A person is guilty of harassment when, with intent to harass, annoy or alarm another person:

1. He strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same; or

2. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or

3. He follows a person in or about a public place or places; or

4. As a student in school, college or other institution of learning, he engages in conduct commonly called hazing; or

5. He engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

N.Y. Penal Law § 240.25 (McKinney 1980). Ample evidence supports Ogletree's "good faith" and probable cause arrest on these charges.[6] From the moment the police officer approached the Bidales' van he was the target of Ms. Alberts' verbal assault. This assault later included physical abuse as well. Ogletree interpreted Ms. Alberts' behavior as constituting disorderly conduct and harassment. It appears under the circumstances that this interpretation is consistent with the "reasonable man" standard enunciated in *Pratt* and validated her arrest.[7]

Plaintiff further argues that the alleged excessive force displayed by Officer Ogletree while effecting her arrest violated her constitutional rights. Even though Ms. Alberts has failed to prove that her arrest was not based on probable cause, the arrest might still be violative of section 1983 if "the conduct of the arresting officers in making the arrest was so offensive, under the circumstances, as to 'shock the conscience' of the trier of fact." *Pratt*, 533 F.Supp. at 115. The conduct of Ogletree is not to be condoned and it appeared at trial with the benefit of hindsight that other means might have been available to subdue the plaintiff. However, it is this court's duty not to scrutinize the officer's behavior but instead to determine if the force he utilized is excessive. In order to determine if the force was excessive

> a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), *quoted in Martinez v. Rosado*, 614 F.2d 829, 832 (2d Cir. 1980).

The facts in this case lead to the undeniable conclusion that Ogletree's force was not excessive. At the time the police officer confronted Ms. Alberts she was agitated, boisterous and seemingly uncontainable. Ogletree did not resort to violence at the first instance but only retaliated when the plaintiff began to hit and kick. In a face to face confrontation on a sidewalk between a police officer and a smaller woman a blow to the eye might well be excessive; but, in the instant case, where plaintiff was kicking the officer in the stomach and groin while he tried to open the van door to effect her arrest, the apparent balance of power is realigned and the officer's reaction must be viewed in a different light. As the officer testified at trial:

> ... when I opened the van she started kicking me in this area, in the stomach area, in the groin area, her feet were moving like this, both feet, and I caught one of her legs, pushed her to the side—that's when I hit her because she scratched me on my arm and she scratched my face.

Trial Transcript at 80–81.

The credibility of the witnesses must also be factored into any evaluation of Officer Ogletree's use of force. Ms. Alberts impressed me as a woman who is neither small nor fragile as her counsel argued, but who was abusive to the officer on the night in question yet refused to acknowledge her disorderly behavior. Ms. Alberts' testimony, which describes herself as a placid victim of the violent police officer, is incredible. The corroborating testimony of Ms. Alberts' fiance, Kosmas Bidales, is equally incredible in its attempt to absolve the plaintiff. Plaintiff's instigation and incitement of the police officer was made clear at trial and consequently Officer Ogletree's

---

6. Probable cause for the resisting arrest charge was also established at trial. *See* N.Y. Penal Law § 205.30 (McKinney 1981).

7. It is unclear from plaintiff's amended complaint whether a cause of action lies in state law for false arrest. If such a claim is presented, it fails in any event. Officer Ogletree's reasonable belief that Ms. Alberts committed a crime is supported by the facts and is sufficient to defeat this claim. *See Johnson v. City of New York*, 401 F.Supp. 50 (S.D.N.Y.1975).

reaction to the plaintiff's behavior cannot under these circumstances be found to be excessive. I am convinced that the officer in good faith used violence only to contain the plaintiff and not for malicious reasons. Accordingly, the plaintiff's section 1983 claim based on the officer's alleged assault of the plaintiff is dismissed.[8]

## CONCLUSION

Plaintiff has failed to prove that any of the defendants violated her rights secured either by the constitution or by state law.[9] The complaint is hereby dismissed.

SO ORDERED.

---

8. It is equally unclear whether plaintiff's complaint contains a cause of action for common law assault. However, a state law claim will also be defeated by Officer Ogletree's reasonable use of force under these circumstances. See Jones v. State, 33 N.Y.2d 275, 307 N.E.2d 236, 352 N.Y.S.2d 169 (1973).

9. Plaintiff states in her amended complaint that she invokes the pendent jurisdiction of this court in asserting her negligence claim. No proof of negligence by any of defendants, however, was presented at trial. Accordingly, this claim is dismissed.