**Jeffrey C. STRATTON**

v.

**Martin J. HATCH and Dennis W. Madore.**

**Civ. No. 81–176.**

United States District Court,
D. Vermont.

Oct. 22, 1984.

Richard I. Rubin, Skinner & Rubin, Barre, Vt., for plaintiff.

Robert R. McKearin, Dinse, Allen & Erdmann, Burlington, Vt., for defendants.

## MEMORANDUM OF DECISION

HOLDEN, Senior District Judge.

The defendants, Martin J. Hatch and Dennis W. Madore, attack special and general verdicts for the plaintiff, Jeffrey C. Stratton. The jury found the defendants liable for violations of the plaintiff's civil rights for arresting him without probable cause and for the use of excessive force in taking the plaintiff into their custody.

On August 14, 1984, final judgment was entered for the plaintiff on the verdicts returned by the jury. The defendants

moved, on August 22, 1984, pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure for judgment notwithstanding the verdict and for a new trial.

*Discussion*

A. *Judgment Notwithstanding the Verdict*

*False Arrest*

■ By special verdict, the jury found that the defendants arrested the plaintiff without probable cause. The jury further reported its finding that in arresting the plaintiff, the defendants acted without a good faith belief to justify taking the plaintiff into custody. The jury's answers to these questions cannot stand and must be set aside as a matter of law.

Recently, the United States Supreme Court reaffirmed the basic principle that probable cause determinations in whatever context turn on an evaluation of the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, ——, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), *reh'g denied*, —— U.S. ——, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). In that case, the court wrote that

> probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.

*Id.*

Moreover, the determination of probable cause requires only a probability, or substantial chance of criminal activity, not an actual showing of such activity. *Id.* at —— n. 13, 103 S.Ct. at 2335 n. 13. Recently, Judge Sofaer noted that the passage of time has not diminished the force of Learned Hand's observation that

> the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon trial, unless the powers of peace officers are to be so cut down that they cannot perform their duties.

*U.S. v. Heitner*, 149 F.2d 105, 106 (2d Cir. 1945), quoted in *U.S. v. Gazzara*, 587 F.Supp. 311, 317 (S.D.N.Y.1984).

Probable cause to effect an arrest depends

> upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at the moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Brinegar v. United States*, 338 U.S. 160, 175–176 [69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879]; *Henry v. United States*, 361 U.S. 98, 102 [80 S.Ct. 168, 171, 4 L.Ed.2d 134]. 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating ... often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' *Brinegar v. United States, supra* [388 U.S.], at 176 [69 S.Ct. at 1311].

*Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

Although, in an action under Section 1983, whether probable cause exists in a given situation is generally a question for the jury, "[w]here there is no conflict in evidence, the court may make its own legal determination of probable cause." *Garris v. Rowland*, 678 F.2d 1264, 1270 (5th Cir.), *cert. denied*, 459 U.S. 864, 103 S.Ct. 143, 74 L.Ed.2d 121 (1982).

The motor vehicle law of Vermont provides in Title 23 of the Vermont Statutes Annotated, in Section 1012:

*Obedience to enforcement officers*

> A person, while operating or in charge of a motor vehicle shall, upon request by an enforcement officer, give his name and address and the name and address of the owner of the motor vehicle and produce his operator's license and the registration certificate for the motor vehicle. A person operating a motor vehicle shall promptly and carefully stop when signalled to stop by an enforcement officer

wearing insignia which identifies him. (Added 1971, Adj. Session, § 3, eff. March 1, 1973).

Section 1013 provides:

*Authority of enforcement officers*

Enforcement officers may make arrests for violation of this title, may direct, control and regulate traffic and make reasonable orders in enforcement of this title or to prevent or alleviate traffic congestion, property damage or personal injury. No person may knowingly fail or refuse to comply with any lawful order or direction of any enforcement officer. (Added 1971, Adj. Session, § 3, eff. March 1, 1973).

The arrest was also lawfully made pursuant to Rule 3(a) of the Vermont Rules of Criminal Procedure [1] and pursuant to traditional precepts of common law.

The evidence is clear and convincing that the defendant Hatch, while wearing the insignia and uniform of the Vermont State Police, signalled the plaintiff to halt his vehicle. In direct disobedience to the officer's direction, the plaintiff continued to speed his departure from the Village of Plainfield, Vermont where Officer Hatch had been summoned to quell a public disturbance on the night of July 3, 1980. The unequivocal violation of these provisions of the law of Vermont in the presence of the defendants provided reasonable and probable cause to arrest the plaintiff and invoked a duty on the defendants to do so.

Without weighing the credibility of the witnesses, the strength of the evidence on probable cause is such that it leads to but one conclusion: the plaintiff's conduct provided the defendants with just cause to effect the arrest. *Brady v. Southern Railway Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943); *Simblest v. Maynard*, 427 F.2d 1, 5 (2d Cir.1970); C. Wright, *Law of Federal Courts* § 95 (4th ed. 1983). The answers provided by the jury to Questions 1 and 2 of the special verdict must be set aside.

*Use of Excessive Force*

The jury's special verdict answer to Question 3 concerning the defendants' use of excessive force to take the plaintiff into custody stands differently.

■ A law enforcement officer's conduct in making an arrest rises to the level of a constitutional violation when that act, under the circumstances, is sufficiently aggravated and offensive as to "shock the conscience" of the trier of fact. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *see also Martinez v. Rosado*, 614 F.2d 829, 832 (2d Cir.1980) (per curiam); *Alberts v. City of New York*, 549 F.Supp. 227, 232 (S.D.N.Y.1982); *Pratt v. Bernstein*, 533 F.Supp. 110, 115 (S.D.N.Y. 1981). In *Johnson v. Glick, supra*, a civil rights case involving the use of force in the management of prisoners, Judge Friendly set out guidelines to aid the trier of fact in its determination of whether a constitutional violation has occurred:

> Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

481 F.2d at 1033.

■ On this issue, while the court may have reached a different finding, it is not persuaded, after considering the evidence in the light most favorable to the plaintiff, that there is: 1) a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or

---

**1.** Rule 3(a) of the Vermont Rules of Criminal Procedure provides that a law enforcement officer may arrest a person whom the officer has probable cause to believe has committed a crime in the officer's presence.

2) such an overwhelming amount of evidence in favor of the defendants that reasonable and fair minded triers of facts could not reach a verdict of liability against them. *Haskell v. Kaman Corp.*, 743 F.2d 113, at 119–20 (2d Cir.1984), quoting *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168 (2d Cir.1980).

In pressing their motion, defendants place heavy reliance on the testimony of Dwayne Natvig, M.D., who examined the plaintiff within an hour of the alleged beating on the Middle Road outside of Plainfield. Doctor Natvig testified that from the injuries he observed on Jeffrey Stratton, only mild to moderate force was used, although it was possible that other injuries would become evident at a later time. While the extent of injuries inflicted is one criterion for determining whether a constitutional violation has occurred, Judge Friendly's opinion goes on to point out that there is no threshold requirement concerning the seriousness of a plaintiff's injuries for Section 1983 liability to be invoked. *Johnson v. Glick, supra,* 481 F.2d at 1033. *See also Norris v. District of Columbia,* 737 F.2d 1148, 1150 (D.C.Cir.1984) (Ginsburg, J.).

The plaintiff testified at trial that he promptly pulled his car to the right shoulder of the roadway when he saw the blue flashing lights of a police car. He got out of the car and was standing by the door. At this point, plaintiff explained that as he was reaching for his wallet, "I looked up and there was a fist." He remembers two blows to the side of the head, then blacked out for a time. When he revived, plaintiff recalls that one officer was punching him in the head, while another was kicking him in the side. Other witnesses testified about the struggle on the ground and about the residual effects of the incident on plaintiff.

Defendants do not question that there was a one- or two-minute struggle with plaintiff during which blows were struck. Defendant Hatch admits to striking plaintiff two times in the head with the heel of his hand. Defendant Madore testified that he punched Jeffrey Stratton in the shoulder two or three times to make him release his arms from their locked position under his chin. Both officers testified that their actions were necessary to effect an arrest due to plaintiff's resistance. On the other hand, the jury may have been persuaded that three strong and well-trained law enforcement officers could have subdued a young resistor without striking intentional blows.

■ Considering all the evidence in the light most favorable to the plaintiff, the jury's verdict that the force used by the defendants in arresting the plaintiff was unreasonable under the circumstances must be left undisturbed. Since the compensatory damages concerned the force used by the defendants to accomplish arrest rather than probable cause for taking the plaintiff into custody, the court will not disturb the damage awards.

### B. *New Trial*

■ Initially, plaintiff raises an alleged procedural defect concerning service of defendants' motion for a new trial. In an affidavit filed September 9, 1984, plaintiff's counsel states that defendant's motion was served on him on August 27, 1984.

Rule 59 of the Federal Rules of Civil Procedure requires that a motion for a new trial be served within ten days of entry of judgment. Rule 5 of the Federal Rules of Civil Procedure provides that service of such a motion may be made by mail and is complete upon mailing. An amended order of judgment was filed August 14, 1984. Defendants provide an affidavit from someone employed in the law offices of defendants' counsel stating that the motion for judgment notwithstanding the verdict and for a new trial was placed in the mail to the clerk's office in Rutland on August 21, 1984. The clerk's office received and filed the motion the following day, August 22. Without probing the facts further, the court treats the motion as being timely presented.

Defendants' initial contention that they are entitled to a new trial because the verdict is against the weight of the evidence must fail in light of the court's discussion of the motion for judgment notwithstanding the verdict. As explained above, the court holds that there is substantial evidence to support the jury's special verdict on the issue of defendants' use of unreasonable and unnecessary force.

The defendants' motion further challenges the result reached at trial by raising a variety of errors in evidentiary rulings and questions of law. The court will not undertake to review in depth the remaining assignments of error urged by the defendants. Erroneous rulings may have attended certain aspects of the conduct of the trial, yet the essentials of a fair trial were met. Consideration of the oral and written arguments on defendants' present motion is not persuasive that the dictates of substantial justice require that the movants be afforded a second opportunity to defend the action.

Rule 61 of the Federal Rules of Civil Procedure further instructs that the court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." There has been no showing that considerations of substantial justice were undermined in sufficient depth to displace the jury's verdicts and disturb the final judgment. 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2805, at 41 (1973).

Lastly, defendants claim that they were unfairly harmed by the court's denials of their requests for a continuance to produce Bradley Stratton, plaintiff's brother, as a witness. At the time these requests were denied, defendants' counsel was unable to provide the court with any indication as to when, or whether, Bradley Stratton might be available to testify since the witness could not be located.

There has been no showing that Bradley Stratton was a crucial witness. With this uncertainty, the court was unwilling to halt the proceedings to grant the type of uncertain continuance requested by the defendants. It now appears from representations in the post-trial memoranda that Bradley Stratton might have provided unwilling testimony for the defendants. By the same token, his testimony might well have aided his brother's case in the eyes of the jury. The court perceives no abuse of its discretion in delaying the progress of the trial to enable the defendants to effect service on an elusive witness. In any event, the prejudicial effect on either party has not been demonstrated. Nor does it appear that the court's rulings in this regard undermined the substantial rights of the parties. Fed. R.Civ.P. 61.

In summary, the defendants' assigned errors in the conduct of the trial are found to lack substantive merit and cannot be sustained. For the reasons expressed above, defendants' motion for judgment notwithstanding the verdict and for a new trial is denied.

It is SO ORDERED.