**Darius GITTENS, Plaintiff,**

v.

**James E. SULLIVAN, Superintendent, and Thomas Coughlin, Commissioner, Defendants.**

**No. 87 Civ. 1463 (EW).**

United States District Court, S.D. New York.

Sept. 28, 1987.

Darius Gittens, pro se.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendants; Peter A. Durfee, Asst. Atty. Gen., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Darius Gittens is an inmate at the Sing Sing Correctional Facility. He commenced this action, *pro se*, for injunctive and compensatory relief against the Superintendent of Sing Sing, Thomas E. Sullivan, and the State Corrections Commissioner, Thomas Coughlin. Gittens alleges that the New York policy of denying prisoners free access to copier machines and unlimited free mailings violates his rights under the first, fifth and fourteenth amendments to the Constitution. He also claims that the defendants have "wantonly" prevented him from earning money to conduct his litigation by confining him in punitive segregation.

The defendants move to dismiss the action for failure to state a claim, or, alternatively, for summary judgment pursuant to Rule 56(b). The plaintiff cross-moves for leave to supplement his complaint. Five of the supplementary causes of action allege that defendant Sullivan seized and opened Gittens' legal mail, and subsequently delayed sending that mail sent to this Court.

### BACKGROUND

Gittens is serving a 5–10 year sentence in Sing Sing prison following a burglary conviction. In December 1986, upon his recapture after an escape with two other inmates, he was sentenced to two years in special housing (punitive segregation). He is by his own admission an "experienced pro se litigent [sic] who has a number of actions in County, Supreme, Appellate and Federal Courts."[1] Plaintiff claims that he,

---

1. The memorandum submitted in support of defendants' motion states that the plaintiff has

as an indigent, is denied meaningful access to the courts by the regulations and policies enforced by the defendants, which deny him free access to copier machines and unlimited free mailings. Department of Correctional Services Directive 4422[2] provides that inmates shall receive free postage in an amount equivalent to five free postage stamps per week for all correspondence.[3] Inmates also are advanced $20.00 for postage on legal mail. If an inmate exceeds this twenty dollar limit, the Superintendent may advance more money for postage fees on legal mail. The State claims that Gittens was advanced $36.08 as of March 31, 1987,[4] for postage on legal mailings. Gittens responds that the Superintendent improperly kept some money owing to Gittens from the State of New York, in an effort to deprive the plaintiff of access to the courts. Gittens further claims that the provision of carbon paper is insufficient to allow meaningful access to the courts because the New York State courts require numerous legible copies of submissions. The defendants respond that the courts allow the submission of carbon copies as well as xerox copies.

## DISCUSSION

The complaint alleges six causes of action. The second, third, fifth, and sixth causes of action in the complaint are duplicative of the first.[5] Each basically alleges that the defendants have deprived the plaintiff of access to the courts through the imposition of limits on the free use of copier machines and the mails by inmates. The fourth cause of action alleges that the defendants have confined plaintiff in punitive segregation in order to deny him access to the courts.[6] The complaint requests that a preliminary injunction be issued ordering the defendants to refrain from denying plaintiff "meaningful access to xerox copies and legal mail postage (even though plaintiff is indigent and owes legal mail postage in excess of the twenty dollar limit)."[7] Second, plaintiff requests that the defendants be enjoined from retaliating against plaintiff for the prosecution of this civil suit. Last, plaintiff seeks from each of the named defendants, one hundred dollars in compensatory damages, pursuant to 42 U.S.C. § 1983, for time spent on the briefs for his cases, and for mental and physical pain suffered as a result of the defendants' activities.[8] The proposed supplemental complaint is based upon events that allegedly have occurred subsequent to the filing of this lawsuit. Although the plaintiff is an experienced litigant with some twenty-three actions before the courts in the past two years, his pro se complaint is to be construed liberally.[9]

■ The plaintiff's request for damages is based on his allegations that the defendants have violated his constitutional rights through the implementation of Directive 4422 and the xeroxing limits. This claim is barred by the eleventh amendment. Under 42 U.S.C. § 1983, there is no abrogation of a State's eleventh amendment immunity from damage suits in the federal courts.[10]

had 23 different actions before various courts during the past two years.

2. 7 NYCRR § 720.3(d).

3. Directive 4422(D)(1).

4. Computer records attached as Exhibit D to defendants motion to dismiss.

5. Under Federal Rule of Civil Procedure 12(f), the Court may *sua sponte* order that repetitive claims be stricken from the complaint.

6. In special housing, prisoners are denied certain privileges, such as work privileges. *See* Sullivan Affidavit.

7. In his complaint, plaintiff admits that he has been advanced funds beyond the twenty dollar limit for postage; however, in a later submission, plaintiff disputes that he has used up funds beyond that limit.

8. Specifically, Gittens states that he has had headaches, backaches, and loss of sleep due to the actions of the defendants.

9. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam).

10. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 342, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979) (section 1983 does not override the immunity granted to States under the eleventh amendment).

When the alleged deprivation of rights was the result of the officials' adherence to a policy of the State, the action is brought against the defendants in their official capacity, and is barred by the eleventh amendment since the State would eventually have to pay any damages awarded.[11]

■ Plaintiff's claims revolve around alleged violations of his constitutional right of access to the courts.[12] That right of access cannot be unreasonably obstructed by prison officials.[13] In one claim, plaintiff alleges that his confinement to special housing has impeded his access to the courts. This is wholly without merit. The plaintiff was placed in special housing as a result of a disciplinary hearing conducted after plaintiff was recaptured following an escape. Plaintiff does not dispute the authority of a prison to place an inmate in segregation, with less privileges, if the inmate commits a serious infraction.[14] The plaintiff also does not contest the disciplinary proceeding. Instead, plaintiff claims a right to earn money while incarcerated. Balanced against the State's interests in preventing future escapes and punishing past infractions, the inmate's interest in earning money is subordinate. The inmate is not denied access to the courts even if he is indigent because the State provides a certain amount of postage and drafting materials free of charge. He is entitled to and it is apparent, given the amount of materials submitted in the prosecution of this action, that he received adequate funds and materials.

■ Prisoners must be afforded meaningful access to the courts to challenge unlawful confinement and constitutional violations.[15] The Supreme Court has stated that "indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them."[16] This statement has been qualified by courts subsequently reviewing the issue to require "reasonable access."[17] The prisoner's right of access to the courts may be balanced against the State's legitimate interests, including budgetary concerns.[18] The State has stated that it provides carbon paper to inmates for litigation purposes. This should be sufficient to provide proper access to the courts.[19] An affidavit submitted by Peter Durfee, an Assistant Attorney General of New York, states that all the Departments of the New York State Court system before which the plaintiff presently has actions accept carbon copies of papers set for filings. The State should not be forced to provide free access to copier machines for prisoner use when there is an acceptable, less costly substitute. Plaintiff's claim that carbon copies are illegible and too time consuming is without substance. The fact that technology advances make certain tasks easier does not mean that such technology must be readily available to prisoners. Such improvements, as is well known, are costly, and there are law firms, public agencies and commercial organizations that continue

11. *See, e.g., Jones v. Smith,* 784 F.2d 149, 152 (2d Cir.1986).

12. *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

13. *Id.* at 821–23, 97 S.Ct. at 1494–96; *see also Wolff v. McDonnell,* 418 U.S. 539, 577–80, 94 S.Ct. 2963, 2985–87, 41 L.Ed.2d 935 (1974); *Davidson v. Scully,* 694 F.2d 50, 53 (2d Cir. 1982).

14. *See Mukmuk v. Commissioner of Dept. of Correctional Services,* 529 F.2d 272 (2d Cir. 1976), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2238, 48 L.Ed.2d 838 (1976).

15. *See Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974).

16. *Bounds v. Smith,* 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977).

17. *See Chandler v. Coughlin,* 763 F.2d 110, 114 (2d Cir.1985) (stating that an indigent prisoner need only be supplied with postage in a "reasonably adequate" amount to protect his constitutional rights); *Gaines v. Lane,* 790 F.2d 1299, 1308 (7th Cir.1986).

18. *See, e.g., Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977); *Harrell v. Keohane,* 621 F.2d 1059, 1061 (10th Cir. 1980); *Dugar v. Coughlin,* 613 F.Supp. 849, 853 (S.D.N.Y.1985).

19. *See Dugar v. Coughlin,* 613 F.Supp. 849, 853–54 (S.D.N.Y.1985); *see also Harrell v. Keohane,* 621 F.2d 1059, 1061 (10th Cir.1980).

to use less expensive methods. Given the amount of litigation carried on by prisoners, the provision of free copying services for legal papers could prove to be very costly, and to impose upon the State unnecessary financial expenditures.

■ The provision by defendants of $1.10 per week for stamps and an additional advance of $36.00 for legal mailings satisfies the constitutional minimum for access to the courts.[20] The Second Circuit has held, however, that actions for injunctive relief against the implementation of Directive 4422 are not susceptible to disposition on summary judgment motions,[21] and remanded several actions. In one instance, the Court of Appeals recognized the number of actions challenging the constitutionality of Directive 4422, and suggested that on remand, "the parties and the district judges handling these cases cooperate in obtaining a prompt, definitive disposition of this issue."[22] This action is distinguishable from the cases in which the Court of Appeals ordered remand of the issue. In *Jones v. Smith*, two of the consolidated cases were remanded by the Court of Appeals on the issue of whether the $1.10 was sufficient to allow access to the courts.[23] In *Chandler v. Coughlin*, the court also remanded the action for further proceedings as to whether or not the State policy of discretionary advancements for legal mailings comports with the requirements of due process.[24] That action, however, is distinguishable from the instant case because our Court of Appeals stated that the "statement [of the defendants] provides insufficient substance or information to per-

mit [the Court of Appeals] to infer whether the State's discretion is exercised reasonably or arbitrarily."[25] In this case, the affidavit of Thomas E. Sullivan is sufficient to determine upon what basis the denial of funds over and above the extra advances funds was made.[26] The provision of $36.00, plus $1.10 per week, seems adequate to provide an indigent inmate with sufficient postage to prosecute any normal amount of litigation. He has engaged in extensive litigation which by itself does not entitle him to unlimited funds and materials. The number of actions filed by the plaintiff as well as the avalanche of papers submitted by plaintiff in the instant suit indicate that the procedures followed by the defendants have been sufficient to provide plaintiff with meaningful access to the courts. Accordingly summary judgment is granted in favor of the defendants on the claims alleging that the implementation of the State's policy on inmate access to free mailings violated plaintiff's constitutional rights.

There remains plaintiff's motion to file a supplemental complaint, based upon alleged events that have occurred since the filing of the original complaint. The basis of these claims is similar to that of the original complaint since all the claims are related to plaintiff's allegations that his access to the courts has been curtailed. A court has discretion to grant or deny a motion to supplement the pleadings.[27] The standard for the exercise of discretion on a motion to supplement the pleadings is the same as that for disposition of a motion to

---

**20.** The plaintiff asserts that he has not been given an advance of over $36.00; however, this assertion is contradicted by a previous statement by the plaintiff and computer records provided by the defendants.

**21.** *See Jones v. Smith*, 784 F.2d 149, 151 (2d Cir.1986); *Chandler v. Coughlin*, 763 F.2d 110 (2d Cir.1985); *contra Gaines v. Lane*, 790 F.2d 1299 (7th Cir.1986) (State regulations entitling inmates to send three first class letters per week at State expense, and providing "an additional expenditure of state funds for legal mail when such expenditure is reasonable." *Id.* at 1308.).

**22.** *Jones v. Smith*, 784 F.2d 149, 151 (2d Cir. 1986).

**23.** *See id.*

**24.** 763 F.2d 110 (2d Cir.1985).

**25.** *See Id.* at 114.

**26.** It is also not the case that the plaintiff has not been given the opportunity to answer the affidavits presented by the defendants. The plaintiff was given until July 17 to respond to the motion, and plaintiff's opposition papers were received on July 9, 1987.

**27.** Fed.R.Civ.P. 15(d).

amend a complaint under Rule 15(a), which should be liberally granted.

■ In the supplemental complaint, the plaintiff basically alleges seven new causes of action. Again, the plaintiff seeks injunctive, declaratory, and compensatory relief.[28] This complaint alleges that Superintendent Sullivan prevented plaintiff from using an alternative form of access to the mails (i.e. the use of another inmate's mailing privileges). The supplemental pleadings offered by the plaintiff also allege that the defendant Sullivan violated the federal and New York State Constitutions by submitting a false affidavit. Specifically, the plaintiff asserts that Sullivan withheld a check for $25.55 due to the plaintiff from the State, and then, falsely represented to this Court that the plaintiff's account had a negative balance of over $36.00. Finally, the plaintiff alleges that Sullivan seized, opened, and delayed mail sent to this Court by the plaintiff, in an effort to deny plaintiff access to this Court to prosecute his claim.[29] The plaintiff claims that he has been the victim of a concerted effort to deny him access to the courts and to retaliate against plaintiff for the filing of this action.

The defendants state that the seizure of plaintiff's correspondence to this Court was a result of plaintiff's violations of the State's mail rules. Specifically, a fellow prisoner, Louis David, had tried, at the behest of the plaintiff, to use his own account to send the correspondence at issue. This is a violation of regulations in effect at Sing Sing. David was given a misbehavior report and the mail was retained for a few days as evidence for the disciplinary proceedings of that prisoner. Plaintiff was not injured by the defendant's action because this Court received the papers prior to the July 17, 1987, deadline set for their receipt. Moreover, plaintiff has admitted his enlistment of David and other prisoners in being "forced to break prison rules" by sending mail "via illegal means."

Directive 4422 states that outgoing privileged mail may only be opened and inspected where there is a "reasonable suspicion that the contents of such mail endangers or threatens the safety, security, and operations of a facility or the safety of a party to whom the letter is addressed." In this instance, prison officials were attempting to protect the order of the prison. Plaintiff and the prisoners involved admittedly were engaged in an attempt to circumvent the rules of the prison. Moreover, regardless of the reasonableness of the decision to hold the mail in question, Gittens suffered no injury in this isolated incident. Nor can the complaint be construed to allege a continuing activity of interference with plaintiff's legal mail.[30] Despite the general allegations of retaliatory behavior, Gittens only maintains that his mail has been interfered with on one occasion, and that is insufficient to state a cause of action given the fact that the interference complained of did not affect plaintiff's access to the courts and was occasioned by plaintiff's admitted violation, in concert with other prisoners, of prison rules.[31]

■ The plaintiff, also, charges that money due to him was held up by the prison's administrator, in an effort to deter plaintiff from proceeding with his various legal actions. The defendants responded that the delay was an innocent mistake on the part of other State officials. In an action under section 1983, the defendants must have been personally involved with or

---

**28.** The plaintiff has increased the compensation sought to $15,000. He requests $5,000. in special damages from Sullivan for stress, depression, and anguish arising from the defendant's alleged harassment. Gittens requests another $10,000. in punitive damages from the defendant Sullivan.

**29.** The first, second, third, sixth and seventh supplemental causes of action allege that defendant Sullivan violated plaintiff's constitutional rights in this manner.

**30.** *See Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986) (an "isolated incident" of interference with a prisoner's legal mail may not give rise to an action for damages under 42 U.S.C. § 1983).

**31.** *See Morgan v. Montayne,* 516 F.2d 1367 (2d Cir.1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976).

affirmatively promoted the violation of which the plaintiff complains in order to be held liable.[32]   In this case, Superintendent Sullivan stated in an affidavit that the delay in crediting the plaintiff's account with a check from New York State was the result of the inadvertent action of a State official over whom the defendant had no control or knowledge.   The only response from the plaintiff is an unsupported accusation that the defendant Superintendent has engaged in perjury.   This is insufficient to state a cause of action against the defendants.   The prisoner also has failed to allege that the withholding was part of a policy or custom on the part of the State of New York.

Plaintiff's motion for leave to serve a supplemental complaint is denied.   The defendants' motion for summary judgment is granted.

So ordered.

---

**32.**   *See Duchesne v. Sugarman,* 566 F.2d 817 (2d         Cir.1977).