Carrie L. CHANDLER, Plaintiff,

v.

Thomas A. COUGHLIN, III, Defendant.

Donald JONES, Plaintiff,

v.

Gary COUSINS, Defendant.

Michael McCLOUD, Plaintiff,

v.

Thomas A. COUGHLIN, III, Commissioner, and Charles Scully, Superintendent of Green Haven, Defendants.

Nos. 84 Civ. 3435 (TPG), 86 Civ. 9920 (TPG) and 86 Civ. 7004 (TPG).

United States District Court, S.D. New York.

Jan. 18, 1990.

Shearman & Sterling, New York City, for Carrie Chandler.

Donald Jones, Ossining, N.Y., pro se.

Michael McCloud, Marcy, N.Y., pro se.

Robert Abrams, New York State Atty. Gen., New York City, for defendant.

OPINION

GRIESA, District Judge.

These are three related actions in which inmates of New York State correctional facilities challenge the constitutionality of the rules about providing postage for the mailing of legal materials. Defendants move for summary judgment in all three cases. The motions are granted.

The result in this case is dictated by the decision in *Gittens v. Sullivan*, 848 F.2d 389 (2d Cir.1988), affirming an opinion of Judge Weinfeld, 670 F.Supp. 119 (S.D.N.Y. 1987). Indeed the issues in the present case are so clearly preempted by the ruling in *Gittens* that perhaps a full discussion of the facts and law in the present case is redundant. However, out of an abundance of caution, and in view of the procedural history of this case, a certain amount of exposition will be set forth.

## THE THREE CASES

### Chandler v. Coughlin

This action was commenced in 1984. Plaintiff Carrie L. Chandler, an inmate of Bedford Hills Correctional Facility, brought the action on behalf of herself and all other indigent inmates of the State's correctional institutions who were unable to mail papers to the courts because of the State's rules. The complaint alleged that the Department of Correctional Services ("DOCS") refused to pay postage for the mailing of the briefs and the record relating to her appeal in the New York courts, thereby forcing Chandler to pay approximately $17 postage from her inmate account. Chandler also claimed that she had been prevented by the postage restriction from prosecuting two other actions. The complaint sought declaratory and injunctive relief.

In early 1986 Chandler was released. Pursuant to stipulation and order dated February 21, 1986, Shirley Furtick was joined as a plaintiff in this action, without altering the legal claims in the complaint interposed by Chandler. Furtick was, and apparently still is, incarcerated at Bedford Hills.

The action is brought against Thomas A. Coughlin, III, Commissioner of the DOCS.

The action was originally brought by Chandler *pro se*. Plaintiffs are now represented by the law firm of Shearman & Sterling.

### Jones v. Cousins

This action was commenced in 1984. It was originally brought in the United States District Court for the Western District of New York, but was later lodged in the Southern District for reasons which will be described.

The action is against Gary Cousins, a correction officer at Attica who is alleged to have been in charge of the mail room. The complaint alleges that Cousins interfered with Jones' access to the courts and legal counsel during the period February 23, 1984 to April 10, 1984, while Jones was in the Attica Special Housing Unit. It is alleged that on more than 11 occasions Cousins refused to mail legal and personal mail of Jones, and that other legal and personal mail was lost or confiscated by Cousins. The complaint asserts that since Jones has been labelled a "jail-house lawyer," Cousins may have been attempting to shield prison officials from civil litigation. The claims are said to be brought under various provisions of the Constitution, as well as under 42 U.S.C. § 1983. Damages and declaratory relief are sought.

The complaint does not make any express allegation regarding inability to pay for postage or about denial of free postage. However, it appears that this theory was added to the case in some way in the proceedings in the Western District and on a subsequent appeal.

Jones is suing *pro se*.

### McCloud v. Coughlin

This action was commenced in May 1986, while plaintiff McCloud was an inmate of Greenhaven. McCloud complains about alleged denial of access to the New York Court of Claims because of lack of funds for postage and the refusal of the prison to provide free postage. The complaint apparently seeks injunctive relief. There is no request for damages.

McCloud is suing *pro se*. The defendants are Thomas A. Coughlin, III, Commissioner of the DOCS, and Charles Scully, Superintendent of Greenhaven.

## FACTS

### The Directive

At the heart of this controversy is DOCS Directive 4422. When these three actions

were commenced, Directive 4422 read as follows:

D. Free Postage Program

1. The Department will provide free regular first class postage for five letters of one ounce or less per letter per week to all inmates for mail sent to destinations within the continental United States and Puerto Rico. Inmates may send more than five letters a week, but will be required to pay postage for all correspondence in excess of five letters in any week. Inmates may not accumulate credit for unused postage.

2. Any inmate who wishes to correspond with his/her immediate family members who reside outside the continental United States or Puerto Rico will receive free postage of one letter per week not to exceed $.75 in lieu of the regular five free letters per week for that inmate.

3. All postage for items such as packages, legal briefs, letters in excess of one ounce, or any other form not covered by Item 1 will be sent at the expense of the inmate. Postage for such items may be made available through the sale of stamps in the commissary or through direct charge to the inmate's account utilizing an IAS2706 Disbursement Form. The system utilized for such postage is at the discretion of the facility Superintendent.

On September 19, 1984 Judge Brieant dismissed the *Chandler* complaint for failure to state a claim upon which relief could be granted.

On May 30, 1985 the court of appeals handed down a decision vacating the judgment of dismissal and remanding the case for further proceedings. *Chandler v. Coughlin,* 763 F.2d 110 (2d Cir.1985). The court indicated (*id.* at 115) that on remand the district court should consider the validity of the following aspects of Directive 4422:

(1) The prohibition against accumulating credit for unused postage;

(2) The provision for free postage for five letters of one ounce or less per week, whereas free postage would not be provided for one five-ounce document in a week in which the inmate mailed nothing else;

(3) The blanket refusal to pay postage for any legal brief, or any other document in a form other than a letter, even when such document weighs less than one ounce.

The complaint in the *Jones* case, then known as *Jones v. Smith,* was dismissed by the Western District. The complaint at that time contained claims about inability to transmit mail as well as other claims. The court of appeals, 784 F.2d 149, reversed as to the mail transmission claims and remanded that phase of the case for further proceedings with the suggestion that the case be coordinated with *Chandler v. Coughlin* and similar actions. The case was subsequently transferred from the Western District to the Southern District.

On June 10, 1986 the DOCS promulgated a revised Directive 4422 responding to the comments of the court of appeals in *Chandler.*

D. Free Postage Program

1. The Department will provide free postage in an amount equivalent to five (5) domestic first class letters of one ounce or less per week to all inmates notwithstanding mail destination. Inmates may use all or part of this allotment per item of mail and will not be limited as to the number of items sent, but an inmate will be required to pay for all postage in excess of the weekly allowance. Inmates may not accumulate, from week to week, credit for unused postage.

2. Funds may be advanced to an inmate for the purpose of sending legal mail only, in accordance with the procedures detailed in the ICAS Manual Procedures Handbook.

3. Postage in excess of the free weekly allowance shall be made available by for example, the sale of stamps in the commissary or direct charge to the inmate's account, utilizing an IAS 2706 Disbursement Form. The system utilized to provide such postage is at the discretion of the facility Superintendent or chief ad-

ministrator. While the number of stamps an inmate is permitted to buy or possess may be limited, the total amount of postage available to an inmate with the funds to pay for it should not normally be limited.

Inmates may not receive stamps through the mail.

Paragraph 1, as can be seen, was amended to provide that free postage would be supplied in an amount "equivalent to" the postage for five letters per week. Paragraph 3 was amended to eliminate the prohibition on free postage being used for legal briefs, other items in non-letter form, and letters in excess of one ounce. Thus, under the revised directive, an inmate could obtain free postage in any given week for any type of communication, including a brief or other legal paper, and these could be single or multiple mailings as long as the required postage did not exceed the equivalent of the postage on five first class letters of one ounce each (now 25 cents per letter or a total of $1.25).

As to the points specifically noted by the court of appeals in *Chandler*, Items (2) and (3) were dealt with by changes in the revised directive. Regarding Item (1), dealing with accumulation, there was no substantial change.

On the latter point, Robert K. Mitchell, Director of Budget and Finance of the DOCS, has submitted an affidavit stating:

[A]ccumulating the unused free postage allotment would require corrections staff at each of the DOCS facilities to carry forward week after week and maintain records of the unused balance of free postage for each and every inmate. In my estimation, such an undertaking would require an investment of approximately $600,000 in computer hardware to store the data, and another $20,000 in staff training and deployment per correctional facility (there are 55 facilities) to implement such a recordkeeping system.

An important feature of the revised Directive 4422 is a new paragraph 2 which allows *advances* of amounts in addition to the *free* postage, for the sending of legal mail in accordance with the "ICAS Manual Procedures Handbook." The full title of the handbook is "Legal Procedures Handbook—Inmate Commissary Account System." The ICAS Manual provides that if an inmate exceeds his weekly allowance of free postage, he is notified of this, and then must complete IAS Disbursement Form 2706 in order to obtain postage beyond that weekly allowance. If the inmate's prison account contains sufficient funds to cover the additional postage requested, the account is debited and the mail is processed. If the inmate's account does not have sufficient funds, the inmate is notified and given the opportunity to request an advance. This request is made on IAS Disbursement Form 2708. The guidelines for advancing funds for legal mail are set forth in a memorandum dated June 30, 1986. This memorandum summarizes a decision of the Commissioner of Corrections regarding an inmate grievance, and sets forth the following:

* Typical practice acknowledges a $20 negative inmate account balance for legal postage needs.

* Negative account balances result from the approval and subsequent processing of ICAS 2708 Authorized Advance Request Forms.

* Requests for legal postage advances that place a negative account balance beyond the $20 level may be approved by the Superintendent when it:

* is verified that the mail is legal in nature—*i.e.*, Judge, Clerk of the Court, Attorney, etc.

* is justified as to why it must be sent immediately.

* does not include "special handling" (*i.e.*, Certified, Return Receipt, etc.) charges unless required by the Court and/or statutes.

The effect of this is described by Mitchell in an affidavit as follows:

[I]nmates, as a matter of course, can obtain an advance of up to $20 for the purpose of posting legal mail. Moreover, inmates can obtain an additional advance for legal mail, above $20, with the approval of the facility's Superintendent, provided it is verified at the facility that

(a) the mail is, in fact, legal (*e.g.*, by inspecting the addressee); (b) the mail is urgent; and (c) the advance does not cover "special handling" costs, such as for certified mail—return receipt requested, unless required by the Court or applicable statute.

*Plaintiffs*

The record contains certain relevant information pertaining to plaintiffs.

Each plaintiff has filed numerous actions while in prison. According to records maintained by the New York State Department of Law, as of October 28, 1987 Chandler had filed 20 actions against state agencies or officials; Furtick 6 actions, and Jones 134 actions. From 1982 through March 1987 McCloud commenced 34 actions. During McCloud's incarceration at Green Haven (the institution referred to in his complaint) he commenced 12 actions.

With regard to the amount of postage used by these plaintiffs, the record is silent as to how much free postage was obtained pursuant to Directive 4422. However, the record contains monthly statements of the inmate accounts of Furtick and McCloud. These show the extent to which these two plaintiffs purchased postage (presumably after obtaining the maximum amount of free postage in a given week), and also show the extent to which advances were obtained.

The court has been provided with monthly statements of Furtick's inmate account for July 1985, September 1985 through November 1985, January 1986 through September 1987, and November 1987. During that total of 26 months, Furtick's account was charged 19 times for postage. Those charges ranged from $0.22 to $6.88. The statements for the 17 months during which the revised Directive 4422 was in effect show that Furtick's account was charged for "authorized advances" seven times. Each authorized advance was for $1.67. Those authorized advances for legal mail postage were made at a time when her account had a negative balance.

The court also has the monthly statements relating to McCloud's account for February through September 1986. During this eight month period, McCloud's was charged 32 times for postage. Those charges ranged from $0.22 to $1.92. McCloud's account was not charged for any advances. His account always had a positive balance. There is no evidence that McCloud was ever denied an advance which he requested.

The statements regarding McCloud are particularly instructive. They show that this prisoner was able to support a very considerable litigation campaign without ever needing to obtain the advances which were available to him. Moreover, the figures shown in both the McCloud and Furtick accounts demonstrate (1) that the amount of postage required for mailing legal materials is generally quite modest; (2) that the postage expenses, over and above the free postage allowed, can usually be met from the inmate's account; and (3) that the provision for advances of $20 or more would appear to be more than sufficient to cover any postage expenses which could not be met out of the free postage allowance plus amounts in the inmate's account.

The monthly statements of Jones' inmate account were not provided to the court.

*Information Regarding Postage*

While these motions were pending, the court requested that the parties provide information about the amount of material which could be mailed for the $1.25 weekly free postage allowance. This information has now been supplied.

Currently it costs 25 cents to send up to one ounce of mail by first class in a standard letter-size envelope. A 10 cent surcharge is added if an over-size envelope is used. An additional 20 cents is added to the basic charge for each additional ounce mailed. If an item is sent by certified mail, return receipt requested, it costs an additional $1.75. The following chart indicates the amount of material that may be sent for 25 cents and $1.25:

| Amount of Postage | Size of Paper | Size of Envelope | Sheets of Paper |
| --- | --- | --- | --- |
| $ .25 | 8½ × 11 | letter | 5 |
| .25 | 8½ × 14 | letter | 3 |

| Amount of Postage | Size of Paper | Size of Envelope | Sheets of Paper |
|---|---|---|---|
| $1.25 | 8½ × 11 | letter | 35 |
| 1.25 | 8½ × 14 | letter | 27 |
| 1.25 | 8½ × 11 | over-size | 26 |
| 1.25 | 8½ × 14 | over-size | 19 |

With regard to the 35 sheets of 8½ × 11 paper and the 27 sheets of 8½ × 14 paper which can be sent for $1.25 in letter-size envelopes, it is obvious that these quantities of pages would probably be beyond the capacity of such an envelope. However, the point of the table is to illustrate that a substantial number of sheets *up to* 35 in the one case and 27 in the other can be placed in a letter-size envelope and mailed for $1.25. As the table also shows, a slightly lower number of sheets, but still substantial, can be sent in the over-sized envelopes.

Counsel for defendants have also provided a survey of some of the procedural rules governing *pro se* and *in forma pauperis* litigants which eliminate many filing requirements and, therefore, mailing costs associated with such litigation. For example, inmates appealing from a New York State conviction and who are granted permission to proceed *in forma pauperis* are not responsible for filing the transcript with the state court. Instead, the court reporter must file the transcript and may be ordered to furnish a copy to the inmate. N.Y.Crim.Proc.Law § 460.70(1).

The court has also been furnished with certain data regarding legal papers and other legal mail from prisoners received by the state Attorney General's office for a representative period of time, May 26—June 1, 1989. Of the 36 items of prisoner mail received, 20 items used 25 cents postage, 12 items used greater than 25 cents but not greater than $1.25 postage, and four items used postage greater than $1.25. Of the four items which used postage exceeding $1.25, all were sent by certified mail which cost an additional $1.75. Had the four items not been sent by certified mail, the amount of postage would have been less than $1.25.

## PLAINTIFFS' CONTENTIONS

Although the actions were originally brought when the former version of Directive 4422 was in effect, on the present motions the parties are directing their arguments to the revised directive.

Furtick first argues that indigent inmates are constitutionally entitled to unlimited free postage for legal mail, and that even the revised Directive 4422 is invalid as a matter of law. In the alternative, Furtick argues that, if a standard of reasonableness is to be applied to the State's rules regarding postage, then there are issues of fact which cannot be disposed of on summary judgment. Furtick contends that she is entitled to discovery and trial on whether the limitations in Directive 4422 are reasonable in light of the State's budgetary situation.

Jones has filed an affidavit in opposition to the summary judgment motion confirming that the period he is complaining about is February 23, 1984 to April 10, 1984. He alleges in general terms that "legal mails were in fact never mailed for plaintiff." However, he gives no specifics of what these mailings contained or were intended to accomplish, or what occurred to any of his 134 actions as a result of the alleged failure to transmit the items. As to the matter of postage, Jones' affidavit alleges in general terms that he was denied free postage and the advances now authorized by the revised directive.

McCloud has filed an affidavit objecting vaguely to the description by the defense of his various litigations. He also contends that on May 3, 1986 he did not have sufficient funds to mail, by certified mail, 40 notices of intention to sue to the New York Court of Claims and the New York Attorney General.

## DISCUSSION

The Supreme Court has held that due process requires prison inmates to be afforded meaningful access to the courts to pursue their legal rights, including rights under the Constitution. *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), where the Court stated:

It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. *Id.* at 824–25, 97 S.Ct. at 1496. The Second Circuit, in its remand decision in *Chandler*, stated that it did not read *Bounds* "as requiring that the indigent inmate be provided unlimited free postage," but only that he be provided a "reasonably adequate" amount of postage for access to the courts. *Chandler v. Coughlin*, 763 F.2d 110, 114 (2d Cir.1985).

As described earlier, the court of appeals suggested that the various "postage cases" in the second circuit be coordinated before one judge. *Jones v. Smith*, 784 F.2d at 151. However, one case which escaped this coordination was *Gittens v. Sullivan*, which was before Judge Weinfeld in the Southern District. There, the complaint challenged, among other things, the revised Directive 4422 as not making adequate provision for legal mail for indigent state prisoners. The judge granted the defendants' motion for summary judgment and dismissed the case, holding that the directive's provision for free postage and for advances beyond the amount of free postage, "seems adequate to provide an indigent inmate with sufficient postage to prosecute any normal amount of litigation," and satisfies the constitutional requirement for access to the courts. 670 F.Supp. 119, 123 (S.D.N.Y. 1987). The court of appeals affirmed, quoting the reasoning of Judge Weinfeld. 848 F.2d 389 (2d Cir.1988).

Plaintiffs argue that the present cases are distinguishable from *Gittens.* But what has actually occurred is that a fuller factual record was developed here than in *Gittens*, and the present record only serves to show more forcefully that the provisions of the revised Directive 4422 are entirely reasonable and constitutional. It is clear that, with few exceptions, the legal mailings of inmates can be carried out within the authorized allowances for free postage. In the unusual cases where this is not possible, an advance is available. In view of the provisions in the revised directive regarding free postage and advances, the question of accumulation from week to week is hardly of great moment. In any event, defendants have provided a statement setting forth the rather obvious fact that the establishment of running postage accounts over substantial periods of time would entail more expense and labor than could possibly be justified.

Defendants are entitled to summary judgment dismissing the various claims in these three cases seeking declaratory and injunctive relief against the revised Directive 4422.

Certain other issues raised in the *Jones* and *McCloud* cases need to be dealt with.

*Jones* makes a claim, apart from the postage matter, that defendant Cousins deliberately held up or confiscated his mail in order to protect prison personnel from Jones' civil suits, and possibly for other improper reasons. His claim is for a period of time in 1984, before the adoption of the revised directive. Jones is suing for damages and declaratory relief.

The declaratory relief claim is moot. As to the damage claim, Jones has not given even minimal specific facts about the nature of the mail allegedly mishandled and how he was damaged. In this connection, a strong factor against Jones' damage claim is the outlandish amount of litigation which he has launched, and to which his alleged mailings presumably related. Defendant Cousins is entitled to summary judgment dismissing all of Jones' claims.

*McCloud's* action refers to a specific alleged failure to transmit mail occurring in May 1986, before the revision of Directive 4422. This is obviously not a ground for injunctive relief against the revised directive, and no damages are sought. Defendants are entitled to summary judgment dismissing all claims in this action.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted and all three actions are dismissed.

SO ORDERED.